44 A.3d 362

Ocie L. BLACK, Jr.

v.

STATE of Maryland.

No. 73, Sept. Term, 2011.

Court of Appeals of Maryland.

May 3, 2012.

330

332

Deborah S. Richardson, Asst. Public Defender (Paul B. DeWolfe, Public Defender, and David P. Kennedy., Asst. Public defender, Baltimore, MD), on brief, for petitioner.

Ryan R. Dietrich, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, GREENE, ADKINS, BARBERA, DALE R. CATHELL (Retired, Specially Assigned) and JAMES A. KENNEY, III (Retired, Specially Assigned), JJ.

GREENE, J.

In this case, we must determine whether Petitioner, Ocie L. Black, Jr., has produced a sufficient appellate record establishing that there was trial error, in a situation where the record contains an unexplained and unmarked jury note that the trial judge indicates that he neither saw nor responded to during

the course of the criminal trial. Petitioner was charged in the Circuit Court for Howard County with child sexual assault and related offenses with regard to the assault of his girlfriend's daughter, Kayla. The offenses allegedly occurred between the time when Kayla was seven and twelve years of age. Following a jury trial, the jury convicted Petitioner of one count of child sexual abuse, two counts of second degree sex offense, and two counts of third degree sex offense. The court imposed a sentence of thirty-two years incarceration.

Petitioner noted an appeal to the Court of Special Appeals, claiming, *inter alia*, that the trial court erred in failing to disclose a jury note to him and his trial counsel. In an unreported opinion, the intermediate appellate court affirmed the judgment of the trial court. We granted *certiorari, Black v. State,* 422 Md. 352, 30 A.3d 193 (2011), to answer one question: "Does a jury note with no date or time stamp found in the appellate record establish that the trial court received the jury communication at issue in order to trigger the requirements of Md. Rule 4–326(d)?" We shall answer that question in the negative and affirm the judgment of the Court of Special Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

For purposes of our review, we focus on the facts surrounding the jury notes found in the appellate record and on the known facts that relate to those notes. After the close of all the evidence in this case, the jury began its deliberations around 5:10 p.m. on July 23, 2008, and returned with its verdict at 12:06 a.m. on July 24, 2008. At some point after the jury returned with its verdict and had been excused, five notes relevant to this discussion were found located in a single envelope contained within the court file; three of the notes, as confirmed by the affidavits of the trial judge, the prosecuting attorney, and the defense attorney, were actually communicated to the trial court and a response was given by the trial judge.[1]

---

1. Furthermore, twelve additional jury notes were contained within the court file, in the same envelope. The Court of Special Appeals charac-

All five notes were written on loose-leaf style, lined paper. The first note is dated in the upper right-hand corner as follows: "7/23/08 Received 8:18pm." The substantive part reads: "We would like to reconvene in the morning. And could we have more copies of the jury instructions?" The note is signed, "Elisabeth L[____] [J]uror # 1 [.]" Below the signature, there is a handwritten response: "Here are more copies of the instructions. Please continue deliberating." The second note is dated: "7/23/08 9:55pm." It reads: "In relation to the charge of fellatio, did Kayla testify that her mouth touched the defendant's penis?" It is signed, "Elisabeth L[____] [J]uror # 1[.]" Below the signature is the handwritten response, which reads: "You must rely on your own memory of the testimony." The third note is dated in the upper right-hand corner: "7/23/08 11:40pm." It further reads in substance: "For the definition of fellatio we need some clarification, does there only have to be contact or does there have to be penetration? Same question applies to cunnilingus." The note is signed, "Elisabeth L[____] [J]uror 1[.]" A response is written below the signature for juror number one. It reads: "The instructions for 2[nd] [degree] sex offense (cunnilingus) and 2[nd] [degree] sex offense (fellatio) and 3rd degree sex offense were inadvertently left off the 5 extra copies. They have been attached. The legal definition of cunnilingus and fellatio are set forth in the instructions for 2[nd] [degree] sex offense that have been provided."

Note four, which is at issue in this case, was not dated, nor was any time placed on the paper indicating receipt by the

---

terized the notes in the following way: "The remaining notes in the record are personal notes from individual jurors requesting that a member of the court staff call their home[s] to inform their famil[ies] that they are still deliberating." For example, one of the notes provides a phone number and reads: "Juror # 4—Pam W[____] .... Still at the courthouse. Will be home late." Another note, presumably in response, reads: "# 4 Left a voicemail[.]" The personal notes are neither dated nor time-stamped. As discussed more fully in this opinion, Maryland Rule 4–326(d) is triggered when the court receives "any communication from the jury pertaining to the action[.]" Because the personal notes do not "pertain to the action," they do not fall within the ambit of Rule 4–326(d).

court during the course of the trial or deliberations. The Note contains a statement and a question. It reads: "We agree on 2 out of the 5, but have not come to an agreement on the other 3 ... do you have any suggestions on how to proceed?" The Note is signed, "Elisabeth L[＿＿] [J]uror # 1[.]" The fifth note is a small strip of paper. In the lower left-hand corner margin there is drawn a picture of what appears to be a flower or four-leaf clover. Outside of the margin, in the body of the strip of paper, is written the word "Guilty[.]" There are no other writings on the paper.

Consistent with the affidavits of the presiding judge, the Honorable Richard S. Bernhardt, and the prosecuting and defense attorneys, the receipt of the three answered notes was clearly a regular part of the trial court proceedings. The record shows that the content of those three notes was communicated to the trial court and responded to by the trial judge before the jury rendered its verdict. Neither the trial judge nor the trial attorneys had any recollection or knowledge with regard to the unanswered Note four. In addition, there is no indication in the record that any of the parties mentioned had any knowledge of Note five, the note depicting a drawing and the word "Guilty[.]" The trial judge, however, was quite specific in stating that "[he] was not in receipt of, nor was [he] made aware, of note " 'Number 4.' "

Moreover, the trial judge outlined in his affidavit his normal practice with regard to jury notes—a practice that he indicated he followed during the trial of this case. According to the trial judge:

> When a jury note was passed to me by the bailiff I would write on the note the date and the time that I received the note. I then would have my law clerk find counsel and bring them to my office. I would discuss the note with counsel and ask for their recommendations. I would inform counsel of what my answer to the jury was going to be and then invite counsel to place any objections on the record at that time. I would then write my answer on the note and have the note returned to the jury.

In the present case, the trial judge stated, "I have no recollection of any communication that occurred between myself and the jury, nor do I have any reason to believe that there was any communication between myself and the jury as to note 'Number 4.'"

On appeal of this case to the Court of Special Appeals, and before this Court, Petitioner asserts that the "trial court erred in failing to disclose to [him] and his counsel the note indicating that the jury was deadlocked." Notwithstanding, the intermediate appellate court affirmed the judgment of conviction, ruling as follows:

Although we acknowledge the principles set forth in *Denicolis* [*v. State,* 378 Md. 646, 837 A.2d 944 (2003) ] and *Fields* [*v. State,* 172 Md.App. 496, 916 A.2d 357 (2007) ], we note that in both cases the threshold determination for triggering the requirements of [Maryland] Rule 4–326(d) is establishing that the trial court actually received the communication in question. *Denicolis,* 378 Md. at 658 [837 A.2d at 951] ("[i]t is clear that a communication from the jury was received"); *Fields,* 172 Md.App. at 516 [916 A.2d at 369] ("what we do know is that the note was submitted and marked as an exhibit"). Thus, where the record does not establish that the pertinent communication was received by the trial court, we conclude that the court's responsibilities under Rule 4–326[ (d) ] do not arise. Rule 4–326[ (d) ] (stating that notice requirements are only triggered upon "the receipt of any communication from the jury pertaining to the action").

In the instant case, none of the jury notes contained in the record were marked as exhibits. Unlike the other notes received from the jury, Note 4 was not marked with a date and time of receipt by the trial court. Though not definitive proof, the absence of a notation indicating the date and time Note 4 was received is contrary to the trial judge's avowed "normal practice of handling jury notes." Note 4 also did not include any written response from the trial court, whereas Notes 1 through 3 included written responses. In the absence of a written response to the note, we would

expect to find some indication of an oral response to the jury's inquiry in the trial transcript. The record, however, indicates that the trial court did not reconvene the jury, to respond to a jury note, at any time between the time deliberations began until receipt of the verdict.

Most conclusively, unlike the general recollections of the trial judges in *Denicolis* and *Fields,* in this case, the trial judge, in an affidavit, attests, "I was not in receipt of, nor was [I] made aware, of note 'Number 4.'" We accept the judge's attestation that Note 4 was not received from the jury. We conclude, therefore, that the trial court's responsibilities under Rule 4–326(d) never arose. We are unwilling to expand the holdings in *Denicolis* and *Fields* to a case in which an entirely unmarked note is "discovered" in the record and the trial judge informs that the note was not received by the trial court.

## DISCUSSION

To determine the existence of reversible error, ordinarily we conduct two inquiries: (1) whether an error occurred in the trial court; and (2) if so, whether that error was harmless beyond a reasonable doubt. *See Stewart v. State,* 334 Md. 213, 228, 638 A.2d 754, 761 (1994); *Noble v. State,* 293 Md. 549, 558, 446 A.2d 844, 848 (1982); *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976). With respect to the first inquiry, we have held that "[t]here is a presumption of regularity which normally attaches to trial court proceedings, although its applicability may sometimes depend upon the nature of the issue before the reviewing court." *Harris v. State,* 406 Md. 115, 122, 956 A.2d 204, 208 (2008) (citations omitted). To overcome the presumption of regularity or correctness, the appellant or petitioner has the burden of producing a "sufficient factual record for the appellate court to determine whether error was committed[.]" *Mora v. State,* 355 Md. 639, 650, 735 A.2d 1122, 1128 (1999); *State v. Chaney,* 375 Md. 168, 184, 825 A.2d 452, 461 (2003); *Bradley v. Hazard Tech. Co.,* 340 Md. 202, 206, 665 A.2d 1050, 1052 (1995). If the appellant or petitioner demonstrates that error occurred, the

burden rests with the State to establish that the error was harmless beyond a reasonable doubt. *Dorsey,* 276 Md. at 658, 350 A.2d at 677.

▮ Maryland Rule 4–326(d), which governs communications between a jury and the trial court, provides:

(d) **Communications with jury.** The court shall notify the defendant and the State's Attorney of the receipt of any communication from the jury pertaining to the action as promptly as practicable and in any event before responding to the communication. All such communications between the court and the jury shall be on the record in open court or shall be in writing and filed in the action. The clerk or the court shall note on a written communication the date and time it was received from the jury.

The requirements enunciated in this Rule derive from the principle that an accused in a criminal prosecution has the absolute right to be present at every stage of trial from the time the jury is impaneled until it reaches a verdict or is discharged; that includes the right to be present "when there shall be any communication whatsoever between the court and the jury[,] unless the record affirmatively shows that such communications were not prejudicial or had no tendency to influence the verdict of the jury." *Midgett v. State,* 216 Md. 26, 36–37, 139 A.2d 209, 214 (1958).

▮ In interpreting the Maryland Rules, we have stated that "we use the same well-established canons of construction that we use when interpreting statutes." *Perez v. State,* 420 Md. 57, 63, 21 A.3d 1048, 1052 (2011) (quotation omitted); *State ex rel. Lennon v. Strazzella,* 331 Md. 270, 274, 627 A.2d 1055, 1057 (1993). We "look to the plain meaning of the language employed in the[ ] rules and construe that language without forced or subtle interpretations designed to limit or extend its scope." *Lee v. State,* 332 Md. 654, 658, 632 A.2d 1183, 1185 (1993). We avoid a construction of a rule or statute that is unreasonable, illogical, or inconsistent with common sense. *Gwin v. MVA,* 385 Md. 440, 462, 869 A.2d 822, 835 (2005). We construe statutes and rules as a whole "so that no

word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Moore v. State*, 388 Md. 446, 453, 879 A.2d 1111, 1115 (2005) (citation omitted).

In *Winder v. State*, 362 Md. 275, 322, 765 A.2d 97, 122–23 (2001), we summarized the principles pertaining to communications between the court and the jury:

> The rules governing communications between the judge and the jury are basic and relatively simple to adhere to in practice. If a judge receives a communication from the jury or wishes to communicate with the jury, he or she is required to notify the parties. *See* Md. Rule 4–326(c).[2] The communication with the jury shall be made in open court on the record or shall be made in writing and the writing shall become part of the record. *See* Md. Rule 4–326(c). Putting aside certain exceptions not relevant here, the defendant has a recognized right to be present during communications between the judge and the jury during [the] trial. *See* Md. Rule 4–231(b); *Stewart v. State*, 334 Md. 213, 224–25, 638 A.2d 754, 759 (1994); *Williams v. State*, 292 Md. 201, 211, 438 A.2d 1301, 1306 (1981) ("a criminal defendant's right to be present at every stage of his trial is a common law right [and] is to some extent protected by the Fourteenth Amendment to the United States Constitution"). These rules are not abstract guides. They are mandatory and must be strictly followed. *See Taylor v. State*, 352 Md. 338, 344, 722 A.2d 65, 68 (1998); *Stewart*, 334 Md. at 222, 638 A.2d at 758.

In *Denicolis v. State*, 378 Md. 646, 653, 837 A.2d 944, 948 (2003), we determined that the trial court received four notes from the jury during deliberations. The third note, the note at issue in that case, was marked as an exhibit and sought clarification on the definition of the crime of solicitation. *Denicolis*, 378 Md. at 653, 837 A.2d at 949. There was no

---

**2.** Md. Rule 4–326 was amended in 2003. That amendment added subsection (a), and the other subsections were re-designated accordingly. Thus, the subsection of the Rule discussing communications with the jury was previously subsection (c) and is currently subsection (d).

mention of a third note in the trial transcript, nor was there any other indication in the record that reflected a response or any mention of the note. *Id.* Notwithstanding, a majority of the Court concluded that "[i]t is clear that a communication from the jury was received, for it appears in the record and is labeled as a court exhibit. It is also clear that neither [the defendant] nor his attorney were informed about the communication." *Denicolis,* 378 Md. at 658, 837 A.2d at 951. Two judges dissented, concluding that the record was far from clear because the unexplained jury note, although "signed and marked as a court exhibit," was not referenced in the transcript and bore no time-stamp to indicate whether and when the court, in fact, received it. *Denicolis,* 378 Md. at 664, 837 A.2d at 955 (Battaglia, J., dissenting). The dissent, further disagreeing with the majority that the petitioner had met his burden of establishing trial court error, pointed out that "the record contain[ed] no information that, if the trial judge knew of the note at all, he had time to respond to the jury's request." *Id.* (Battaglia, J., dissenting).

Similarly, in *Fields v. State,* 172 Md.App. 496, 516–17, 916 A.2d 357, 368–69 (2007), the Court of Special Appeals, relying on our decision in *Denicolis,* concluded that the presence of an unanswered note in the appellate record constituted error under Rule 4–326(d). In *Fields,* the official record contained a note that was not reflected in the trial transcripts, "apparently from juror number seven, marked as 'Court's Exhibit # 4.'" *Fields,* 172 Md.App. at 512, 916 A.2d at 366. The note contained a substantive question, and the record did not indicate that any response had been given to the jury. *Fields,* 172 Md.App. at 512–13, 916 A.2d at 366. In concluding that Fields produced a sufficient record on appeal to establish trial court error, the intermediate appellate court reasoned that "[a]lthough we do not know what action was taken in response to the jury's note, what we do know is that the note was submitted and marked as an exhibit in the proceedings and what we must surmise is that there is a real possibility, if not probability, that the jury never received an answer to a substantive question it deemed important to its determination

of who murdered [the victim]. . . ." *Fields,* 172 Md.App. at 516, 916 A.2d at 369.

In the instant case, Petitioner argues that his convictions should be reversed because Note four was found in the appellate record, and the record and transcript indicate that the trial court never disclosed Note four to him and his trial counsel. According to Petitioner, the trial "transcript reveals that the trial judge did not go on the record any time between sending the jury out for deliberations at 5:10 p.m. and when the jury returned its verdict at 12:06 a.m. the following morning." Petitioner claims that although the trial judge provided an account of his usual practice, the judge's affidavit is insufficient to establish that the usual practice was utilized with respect to Note four. Petitioner maintains that "the [mere] appearance of the [N]ote in the record establishes receipt [by the court]."

The State counters, asserting that "because [Petitioner] failed to establish that the trial court was ever in receipt of the [N]ote in question, [he] in turn failed to establish that the trial court had any duty under Rule 4–326(d), let alone violated the duty." The State further asserts that the trial judge's affidavit, affirmatively stating that he did not receive Note four, and the absence of a date or time on Note four, compel the conclusion that the trial court did not receive the Note. Thus, the State maintains that Petitioner has not sufficiently demonstrated that the mandates of Rule 4–326(d) were triggered by the circumstances of this case.

■ When reading the plain language of Rule 4–326(d), it is clear that the trial court's obligations under the Rule begin upon "the receipt of any communication from the jury pertaining to the action[.]" As the Court of Special Appeals correctly concluded, in the present case, the requirements of subsection (d) are not triggered unless Petitioner produces a sufficient appellate record establishing that the trial court actually received the alleged communication. We add that the communication must have been received by the court before the jury rendered its verdict and was discharged.

■ The parties concede, and this Court agrees, that receipt by the "court," as contemplated by Rule 4–326(d), encompasses more than receipt by the trial judge. The court includes the trial judge and all court personnel who are subject to the direction and control of the judge, including, but not limited to, the courtroom clerk, the judge's law clerk, and the bailiff. Thus, receipt by the trial judge *or any court personnel* of a communication from the jury pertaining to the action at a time before the jury renders its verdict constitutes receipt within the meaning of Rule 4–326(d), and the mandates of the Rule are triggered at that time.

■ In April 2005, approximately two years after our decision in *Denicolis,* this Court adopted an amendment to Rule 4–326(d) to require that written communications to or from a jury *shall* be dated and time-stamped and that the time of any oral communications *shall* be noted in the record. *See* Md. Rule 4–326(d) (amended 2005). "There is a strong presumption that judges and court clerks, like other public officers, properly perform their duties." *Schowgurow v. State,* 240 Md. 121, 126, 213 A.2d 475, 479 (1965) (citing *Lewis v. United States,* 279 U.S. 63, 73, 49 S.Ct. 257, 260, 73 L.Ed. 615, 619 (1929)). This presumption of regularity is rebuttable. *Harris v. State,* 406 Md. 115, 122, 956 A.2d 204, 208 (2008). Thus, there is a presumption, under Rule 4–326(d), that written jury communications that are received by the trial court will be dated and time-stamped and that the time of any oral communications will be noted in the record. Furthermore, we interpret the requirements contained in that Rule and the presumption of regularity to mean that when a purported jury note found in the appellate record is not dated or time-stamped, nor is the time of any oral communication noted in the record, there is a rebuttable presumption that the trial court did not receive the communication. The burden is on the petitioner or appellant to overcome the presumption of regularity in a situation where there is no date or time-stamp on the jury note and there is no indication in the record that the trial court addressed, or otherwise responded to, the communication.

■ It is clear from a close reading of *Denicolis* that the majority, in that case, was persuaded that the jury note was received by the trial court not only because it appeared in the court record, but because it was marked as a court exhibit. *See Denicolis*, 378 Md. at 658, 837 A.2d at 951. Thus, there was a reasonable inference for the majority to make in *Denicolis* that a member of the court staff had received the jury note, and had subsequently marked that note as a court exhibit, thereby triggering the mandates of Rule 4–326(d). In the present case, unlike in *Denicolis*, there was an affidavit filed by the trial judge stating affirmatively that he did not know of the existence of jury Note four; thus, it is clear that he did not receive it. The trial judge's attestation, "I was not in receipt of, nor was [I] made aware, of note 'Number 4[,]' " distinguishes the present case from *Denicolis* and supports our conclusion that Note four was not received. Furthermore, it is reasonable for us to conclude, based on the appellate record produced by Petitioner, that no other court personnel received the Note prior to the discharge of the jury. Unlike the circumstances in *Denicolis*, where a member of the court staff marked the jury note as a court exhibit, the Note in the instant case contains no indication that any court personnel received it. The lack of any notations on Note four indicating receipt and the assertion in the trial judge's affidavit that he did not receive the Note, raise a rebuttable presumption that Note four was not received by the court. Notations on a jury communication, including, but not limited to, a date and time-stamp, a signature by the judge, or a marking indicating that a document is a court exhibit, can rebut that presumption. Accordingly, Petitioner has failed to produce a sufficient appellate record to rebut the presumption of regularity.

■ Moreover, for Note four to have been "received," and for it to have any relevance, it must have been received prior to rendition of the jury's verdict. In other words, it must have been received before or during the jury's deliberations, at a time when the trial court could have responded to the communication. For, as we have often stated, information contained in the jury room and discovered or made known after the

verdict has been rendered may not be used to impeach the jury's verdict. *See Stokes v. State*, 379 Md. 618, 637, 843 A.2d 64, 75 (2004) (concluding that "[i]t would be a most pernicious practice, and in its consequences dangerous to this much valued mode of trial, to permit a verdict, openly and solemnly declared in the [c]ourt, to be subverted by going behind it and inquiring into the secrets of the jury room" (quotation omitted)); *Williams v. State*, 204 Md. 55, 70, 102 A.2d 714, 721 (1954) (holding that "[i]n Maryland there has been no deviation from the rule that what takes place in the jury-room ought to be, as it generally is, known only to the jurors themselves and that their testimony cannot in general be heard to impeach their verdict" (citation omitted)). In this case, the record is devoid of any evidence, including any statements by the trial judge, trial counsel, or anyone else present at the trial, to support the conclusion that the jury sent a substantive note, namely Note four, to the court before or during deliberations. If Note four had been dated or time-stamped, this fact could have overcome the presumption that the Note was not received by the court before the jury rendered its verdict. Dates and time-stamps can confirm how much time elapsed between receipt of any jury note and the jury's agreement on a verdict. In addition, a notation on a jury note, such as a marking by the judge, a law clerk, or a courtroom clerk, can raise a presumption regarding the trial court's receipt, thereby removing any ambiguity or doubt from the record.

■ Lastly, in *Denicolis*, this Court concluded that the petitioner's ability to establish the circumstances under which the note in question was received and what, if any, reaction there was to it, was hampered. *Denicolis*, 378 Md. at 657–58, 837 A.2d at 951. In the present case, appellate counsel for Petitioner obtained affidavits from the trial judge and from trial counsel. No adequate explanation was given, however, for the absence in the record of affidavits from the courtroom clerk(s), bailiff(s), and trial judge's law clerk, any of whom may have knowledge bearing on how Notes four and five ended up in the court file and why there is no apparent

response to them in the record. The mere fact that the trial judge failed to respond to a jury communication, which the record supports that he did not receive, does not convince us that no better record than the one presented by Petitioner could have been made for purposes of a direct appeal. Likewise, the state of the record does not persuade us that Petitioner's ability to establish the circumstances surrounding the court's receipt of Note four was hampered. Given the trial judge's attestation that Note four was not received by him, the more plausible explanation for how Notes four and five got into the court record is that all papers left in the jury room after the jury had been discharged were gathered and placed in one envelope, in the court file, for storage, along with jury notes that had been presented to the trial judge for a response.[3]

On the basis of the record before us, we agree with the Court of Special Appeals in concluding that Note four was not received by the court from the jury within the meaning of Rule 4–326(d). In addition, Petitioner did not rebut the

---

**3.** This reasonable conclusion is further supported by the fact that twelve additional jury notes, regarding telephone calls to jury members' families during deliberations, were located in the court record, in the same envelope. Pursuant to the trial judge's affidavit, after receiving a jury communication and consulting with counsel regarding the response, he stated, "I would then write my answer on the note and have the note returned to the jury." Accordingly, it is reasonable to conclude that the dated and time-stamped notes ended up in the jury room following the trial judge's written responses to them. Thus, a plausible explanation, based on the record, is that all of the jury notes, including those that were communicated to the court and responded to by the judge, were gathered from the jury room following the jury's discharge and placed in one envelope in the court record. We encourage courts to lessen the chance for ambiguity by instructing court personnel not to place in the record collateral material left in the jury room that does not pertain to the action or that was not communicated to the court during the course of the trial or deliberations. The better practice is for court personnel to dispose of that material following rendition of the verdict and discharge of the jury. *See* Md. Rule 4–326(a) (requiring that the court "maintain control over the jurors' notes during the trial and promptly destroy the notes after the trial"). Or at least, if such materials are retained, they should be stored in a manner that indicates that they include communications received by the court after rendition of the verdict and discharge of the jury.

presumption of regularity for trial court proceedings. Therefore, the trial court's responsibilities under subsection (d) were never triggered.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. PETITIONER TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.**

BELL, C.J., dissents.

BELL, C.J., dissenting.

The majority holds that, notwithstanding its presence in the trial court file with other notes concededly received, and answered, by the court, a jury note, reporting the jury's progress and asking for the court's "suggestion as to how to proceed," is not a communication received by the court within the meaning of Maryland Rule 4–326. It reasons that the note was not marked as an exhibit, *Black v. State*, op. at 343, 44 A.3d at 371 (2012), the judge did not recall receiving or being apprised of the communication, and the judge stated that he did not have reason to believe that such a communication occurred. *Id.* By so holding and reasoning, the majority places a burden and a responsibility on a defendant that the Rule does not. Under the Rule, a defendant has to establish affirmatively that he or she was not advised, or made aware, of a jury communication pertaining to the action, received by the court. As evidenced by the note being in the court file, the appellant did just that. A defendant does not, and should not, have the further burden of proving how, why, or at what point the court file came to contain a note that, the State alleges, was not received, under circumstances requiring compliance with the Rule, by the very entity, the court, to whom the responsibility for receipt and communication, to the parties, of such a note has been assigned and, in pursuance, at least in part, of which it assembled the file. I dissent.

## I.

Critical to the resolution of this appeal is Maryland Rule 4–326(d). It provided, at the time of the petitioner's trial:

"The court shall notify the defendant and the State's Attorney of the receipt of any communication from the jury pertaining to the action as promptly as practicable and in any event before responding to the communication. All such communications between the court and the jury shall be on the record in open court or shall be in writing and filed in the action. The clerk of the court shall note on a written communication the date and time it was received from the jury."

The Rule is clear: it does not place any burden on the defendant, or the State, for that matter, to receive juror communications or to convey them to or on behalf of the court. The reason that it does not is also clear: neither the defendant nor the State is charged with superintendence or oversight of the jury and neither has control of, or responsibility for, the court file. *See* Md. Rule 8–413.[1] Because it has charge of both the jury and the court file, the Rule understandably and clearly assigns to the court responsibility for receiving communications from the jury and conveying them to the parties. The Rule also recognizes, expressly, that it is the court's responsibility, acting through its clerk, to date and note the time when juror communications are received.

---

1. Maryland Rule 8–413 states, in relevant part:

 "(c) Duties of lower court clerk. The clerk shall prepare and attach to the beginning of the record a cover page, a complete table of contents, and the certified copy of the docket entries in the lower court. The original papers shall be fastened together in one or more binders and numbered consecutively, except that the pages of a transcript of testimony need not be renumbered. The clerk shall also prepare and transmit with the record a statement of the cost of preparing and certifying the record, the costs taxed against each party prior to the transmission of the record, and the cost of all transcripts and of copies, if any, of the transcripts for each of the parties. The clerk shall serve a copy of the docket entries on each party."

**348** 

It is undisputed that the court file contained an envelope,[2] in which there were four notes from the jury, all signed by the same juror, Elizabeth L., juror # 1, pertaining to the action. There is no dispute as to three of these notes; it is conceded by the appellant and the State that they were received by the court, their receipt and the contents communicated to the parties and answered, in writing, by the trial court.[3] Each of

---

2. The majority makes mention of the eleven juror notes, not pertaining to the action, that also are contained in the court file in the same envelope. *Black v. State,* op. at 333–34 n. 1, 44 A.3d at 365 n. 1 (2012). Those notes, appropriately characterized as personal notes concerning contact information and requests from individual jurors, and exemplified by the note from Juror # 4: "Pam W[____] . . . Still at courthouse. Will be home late.," and its presumed response: "# 4 Left a voicemail," were neither dated nor time-stamped. They are relevant to this case because they confirm that all notes from jurors of whatever nature and whether pertaining to the case or not, were received by the court and placed in the file.

3. These notes, with the exception of a fifth note, consisting of a small strip of paper with the word "Guilty," and nothing else written on it, were written in a nearly identical manner as the note at issue. As indicated, they all were signed by the same juror. The first was marked as received at 8:18 p.m. and reads: "We would like to reconvene in the morning and could we have more copies of the jury instructions. Elisabeth L[____] juror # 1." The answer written on the note is: "Here are more copies of the instructions. Please continue deliberating." The second note was marked as received at 9:55 p.m. and reads: "In relation to the charge of fellatio, did Kayla testify that her mouth touched the defendant's penis. Elisabeth L[____] juror # 1." The answer written is: "You must rely on your own memory of the testimony." The third note was marked as received at 11:40 p.m. and reads: "For the definition of fellatio we need some clarification, does there only have to be contact or does there have to be penetration? Same question applies to cunnilingus. Elisabeth L[____] juror # 1." The answer written on the note indicates that the relevant jury instruction was mistakenly omitted and was subsequently sent into the jury.

The fourth Note, the note at issue in this case, as indicated, was in the same envelope as the eleven personal notes and the three companion notes that pertained to the case. Because it was not timed in, we do not know where it fits chronologically. It is also the only one to which, unlike the others, no presumption of receipt has been accorded. It seems to me that, since Note 4 was written and signed by the same juror as wrote and signed the other three notes and was filed in the same envelope as, and appears in the record with, the other notes pertaining to the case that were "received," there is a reasonable and strong inference that Note 4 was received by the court just like the

these notes also was time stamped. Although in the court file, the fourth jury note was neither date nor time stamped, its receipt had not been communicated to the parties [4] and it had not been answered, clearly not a written response. That note, referred to hereinafter as "Note 4," read:

other notes. If it was not, this was through no fault of the petitioner and under circumstances that he could not and should not be required to explain.

4. In preparation for appeal, the petitioner obtained the affidavits of the presiding judge and of the assistant state's attorney and the assistant public defender, who tried the case. Counsel both acknowledged being apprised of, and participating with regard to, the three answered notes that were in the case file, but indicated that they had not seen the unanswered note before it was sent to them by the petitioner's counsel. In his affidavit, the trial judge stated:

"When a jury note was passed to me by the bailiff I would write on the note the date and time that I received the note. I then would have my law clerk find counsel and bring them to my office. I would discuss the note with counsel and ask for their recommendations. I would inform counsel of what my answer to the jury was going to be and then invite counsel to place any objections on the records at that time. I would then write my answer on the note and have the note returned to the jury."

Concerning the note in question, he offered:

"I have no recollection of any communication that occurred between myself and the jury, nor do I have any reason to believe that there was any communication between myself and the jury as to note 'Number 4'... I was not in receipt of, nor was made aware of note 'Number 4.' "

The petitioner, as I have explained, has no burden to explain when, how or why Note 4 came to be in the court file or the circumstances surrounding the court's failure to notify the parties of its receipt. Nevertheless, to buttress his case, he obtained affidavits of certain of the key and most obvious actors in the case, the trial judge, the State and the defense counsel. Those affidavits established what he had to establish, no more and no less: that the note was in the court file and that neither he nor the State had been notified that it was. It is inappropriate and unfair to fault the petitioner, as the majority does, *Black*, op. at 344–45, 44 A.3d at 372, for not getting affidavits from the court clerks, bailiffs or other court personnel, who may have been charged with the oversight of the jury. That simply shifts to the petitioner a burden he does not have, while allowing the court to avoid its responsibilities and the State to benefit from a presumption of regularity, which relieves it of any burden to rebut the petitioner's showing.

"We agree on 2 out of 5, but have not come to an agreement on the other 3 ... do you have any suggestions on how to proceed? Elizabeth L[____] juror # 1."

On its face, it "pertain[s] to the action." There are two critical issues, when was it received by the court and who has the burden of proof on that issue? If it was during the jury deliberations, there was a clear violation of Rule 4–326(d).

## II.

A defendant's right to be present at every stage of trial, including when there are communications between a jury and the court that pertain to the action, "is deemed 'absolute,' and a judgment of conviction ordinarily cannot be upheld if the record discloses a violation of the right." *Perez v. State,* 420 Md. 57, 63–64, 21 A.3d 1048, 1052 (2011) (quoting *Porter v. State,* 289 Md. 349, 352–53, 424 A.2d 371, 374 (1981)). We explained in *Denicolis v. State,* 378 Md. 646, 656–57, 837 A.2d 944, 950–51 (2003):

"In *Midgett v. State,* 216 Md. 26, 36–37, 139 A.2d 209, 214 (1958), we held that an accused in a criminal prosecution has the absolute right to be present at every stage of trial from the time the jury is impaneled until it reaches a verdict or is discharged, and that includes the right to be present 'when there shall be any communication whatsoever between the court and the jury[,] *unless* the record affirmatively shows that such communications were not prejudicial or had no tendency to influence the verdict of the jury.' We have often confirmed that fundamental principle. *See Stewart v. State,* 334 Md. 213, 224–25, 638 A.2d 754, 759 (1994) ('Any communication pertaining to the action between the jury and the trial judge during the course of the jury's deliberations is a stage of the trial entitling the defendant to be present.'); *Bunch v. State,* 281 Md. 680, 685, 381 A.2d 1142, 1144 (1978); *Taylor v. State,* 352 Md. 338, 345, 722 A.2d 65, 68 (1998); *Winder v. State,* 362 Md. 275, 322, 765 A.2d 97, 122–23 (2001); *Miles v. State,* 365 Md. 488, 543, 781 A.2d 787, 819 (2001). In *Stewart,* we added that this right is absolute and that 'a judgment of conviction ordinarily can-

not be upheld if the record discloses a violation of the right.' *Stewart v. State,* 334 Md. at 225, 638 A.2d at 759. The kinds of communication that may be regarded as nonprejudicial, as noted in *Midgett,* are those that clearly do not pertain to the action or to a juror's qualification to continue serving and that are of a purely personal nature. *See Graham v. State,* 325 Md. 398, 415, 601 A.2d 131, 139 (1992)."

The majority, like the Court of Special Appeals, holds that the trial court did not commit reversible error because, in failing to show that the court was in "receipt" of Note 4, the petitioner failed to establish the triggering event for his Rule 4–326 rights to apply. *Black,* op. at 337–38, 341–42, 44 A.3d at 367–68, 370. It concludes:

"It is clear from a close reading of *Denicolis* that the majority, in that case, was persuaded that the jury note was received by the trial court not only because it appeared in the court record, but because it was marked as a court exhibit. Thus, there was a reasonable inference for the majority to make in *Denicolis* that a member of the court staff had received the jury note, and subsequently marked that note as a court exhibit, thereby triggering the mandates of Rule 4–326(d) ... The trial judge's attestation, "I was not in receipt of, nor was [I] made aware of, note 'Number 4[,]' " distinguishes the present case from *Denicolis* and supports our conclusion that the jury note was not received."

*Id.* at 343, 44 A.3d at 371.

I disagree, as I believe the petitioner has shown all that he can—the presence of the note in the court's file with the several other notes pertaining to the action, that were acted on. Such evidence affirmatively established that the note was received by the court. The affidavits which state that neither the trial judge nor counsel recalled receiving the note serve to establish that the note's receipt was never communicated to the petitioner. As this Court made clear in *Denicolis,* 378 Md. at 658, 837 A.2d at 951, failure to inform the petitioner and his attorney about a communication received from the jury, "alone

constitutes error." The burden then shifts, I submit, to the State to prove how the note came to be in the court's file and why its receipt was not communicated to the petitioner. Certainly, it is not the petitioner's burden to explain either of those occurrences.

The majority distinguishes the instant case and *Denicolis*, based on the jury note in *Denicolis* having been marked as an exhibit, while here, it was not. That is an incorrect analysis.[5] To be sure, the jury note in *Denicolis* was marked as an exhibit as were the other three jury notes in that case. 378 Md. at 653–54, 837 A.2d at 948–49. That is not the reason that the Court determined that it had been received, however. It is true that the Court referred to the note being marked as an exhibit, but we also relied on the fact that the note "appeared in the record." *Id.* at 658, 837 A.2d at 951. In fact, it was this latter rationale that we offered first, stating "It is clear that a communication from the jury was received, *for it appears in the record and* is labeled as a court exhibit." *Id.* (emphasis added).[6] This is important because, if the sole or the dispositive reason for our concluding that the jury note had been received was that it had been marked as an exhibit, we did not have to mention its appearance in the record; being marked as an exhibit surely would have sufficed. Being

---

**5.** None of the jury notes pertaining to this case was marked as an exhibit. Apart from the fact that they were in the court file, the only formal indication that they had been received by the court was the noting of the date and time on the written note. According to the trial judge's affidavit, that notation would have been made by him. Following the majority's reasoning to its logical conclusion, the appellant could have shown that the note was received only by showing that it was date and time stamped by the court.

**6.** We followed the same pattern when we set out the facts underlying the case:

"The third note asked for a definition of solicitation. That is the note at issue here. Although the note *is in the record* and is labeled Court Exhibit 4, the record reveals no mention of or response to it. It is not time-stamped, and apparently counsel were unaware of it until after the verdict had been taken, sentence had been imposed, and appellate counsel, while reviewing the record for purposes of appeal, discovered it in the record."

*Denicolis,* 378 Md. at 653–54, 837 A.2d at 949 (emphasis added).

marked as an exhibit necessarily means that it is, "appears," in the record. As significant, we mentioned two, not one reason for our conclusion, it was in the record and it was marked as an exhibit. That a jury note is marked as an exhibit is not an insignificant consideration when determining whether that note has been received; it certainly makes the argument in favor of receipt stronger. That is not the only way to prove receipt and it is not the only indicia supporting it. As we made clear in *Denicolis,* appearance in the record is evidence of receipt.

This Court, in *Denicolis,* did not say, expressly or by implication, that, to show that a jury note was received, for purposes of Rule 4–326, by the court, a defendant must establish, as a prerequisite, that it was marked as an exhibit or, in some other way, have received the imprimatur of the court, via the clerk or the judge. Nevertheless, the majority, characterizing it as a "reasonable inference," interprets *Denicolis* as mandating a showing by the defendant of something more, perhaps that it was marked as an exhibit, than an unexplained appearance of a jury question in the record. It is wrong. Any fact beyond its appearance in the record is not the *sine qua non* to the establishment of receipt, and therefore error; it is merely another factor, building on the appearance factor, making the petitioner's argument that the note was received, though never acted upon, more convincing.

The majority also makes much of the "presumption of regularity or correctness" that the petitioner must overcome with a "sufficient factual record" proving error. *Black,* op. at 337–38, 44 A.3d at 367–68. While I agree that the presumption of regularity does have bearing on this case, I posit both that the petitioner has rebutted this presumption and that the presumption should cut in the petitioner's favor. With regard to the latter, all notes from jurors, whether pertaining to the action, or not, were contained in an envelope in the court file. We must presume that every note in the file was "received" by the court in the ordinary course. In rebuttal, we are asked to speculate that one note, the one neither date nor time stamped, was not received in the ordinary course or even from

the juror who signed it. The basis for that speculation is that it is neither date nor time stamped and because the other notes are, we are asked to conclude that, it necessarily follows, as to that note, that the presumption of regularity or correctness does not apply. The problem with this argument is that the irregularity in treatment of the one note does not prove that the others were handled in the regular course; rather, it undermines the presumption altogether. The court file is prepared by a lower court clerk, and subsequently, he or she prepares the appellate record. Md. Rule 8–413(c). What is clear from this record is that, at some point, the note in question was placed in the court file, we must assume by the clerk, and thus received. There is nothing about Note 4 that would indicate that it was not received in the ordinary course. There is certainly no objective basis for saying when it was received or that its inquiry was satisfied or abandoned. For all the record, unembellished by speculation, reveals, it may have been tendered to the clerk, but then overlooked or mistaken as a personal note or it, as the State and the majority speculate, may have come into the court file after the case was over, upon a later sweep of the jury room, and placed in the file, unnoticed. To vindicate the presumption, it must be shown that the unanswered note was indeed the outlier, that it was not received in the ordinary course and came into the file under circumstances not requiring compliance with Rule 4–326(d). It is not enough simply to say that the presumption applies. The petitioner should not be given the burden to refute and negate the pure speculation as to when, why and how a note from a person over whom he has no charge, came to be in the court file, a file over which he has no oversight.

A similar, though not identical, argument was made, and rejected, in *Denicolis,* 378 Md. at 657, 837 A.2d at 951. Responding to the State's argument "that it is the appellant's duty to preserve a record from which the error he/she claims may be documented[,]" *id.,* the Court was clear:

"It is true that a trial court's actions and decisions are generally presumed to be correct and that it is the appellant's burden to produce a record sufficient to show other-

wise. See *Mora v. State*, 355 Md. 639, 650, 735 A.2d 1122, 1128 (1999) ('It is incumbent upon the appellant claiming error to produce a sufficient factual record for the appellate court to determine whether error was committed.'). *See also Bradley v. Hazard Technology Co.*, 340 Md. 202, 206, 665 A.2d 1050, 1052 (1995); *State v. Chaney*, 375 Md. 168, 184, 825 A.2d 452, 461 (2003). That assumes, of course, the ability of the appellant to produce such a record, which ordinarily is the case. Here, petitioner's ability to establish the circumstances under which the note in question was received and what, if any, reaction there was to it was hampered by the fact that neither he nor his attorney were informed about the note until after the verdict was returned, the jury was discharged, and sentence was imposed. No better record than the one that exists could be made under such a circumstance, at least for purposes of a direct appeal. Nonetheless, the record is more than sufficient to establish non-harmless error."

378 Md. at 657–58, 837 A.2d at 951.

The majority further distinguishes this case from *Denicolis*, because here, unlike in *Denicolis*, the Judge made an affirmative statement that he did not receive the note. The Court of Special Appeals, in *Fields v. State*, 172 Md.App. 496, 916 A.2d 357 (2007), addressed this precise point, concluding that this factor does not, and should not, negate the fact that the clerk, at some point, gathered the note into the court file and thus received it, whether or not the clerk then passed it on to the judge or overlooked it. In *Fields*, the facts were as follows:

"The official record contain[ed] a note, not reflected in the transcripts, apparently from juror number seven, marked as 'Court's Exhibit # 4.' The juror note ask[ed] the following questions: 'Where [sic] there different kinds of shell casing or How many different gun [sic] were used during the shooting.' The note further asks 'Was the same gun use to shoot all [of] the victims.' "

*Id.* at 512, 916 A.2d at 366.

The appellants, noting *inter alia*, the failure to apprise them of the communications and therefore their lack of opportunity

to be present and hear "what, if any, response the Court gave to the jury to address this note," *id.*, argued that the court erred and that the error was reversible. *Id.* Although the trial judge, the State and the defense had no recollection of the note, *id.* at 513, 916 A.2d at 366, the trial judge nevertheless opined that he would have instructed the jury to "decide the case on the evidence" and "[t]here is no chance [the court] would have simply ignored the note if [it] knew about it." He also said that he suspected "that [the note] may have been dealt with in the midst of other cases and that portion of the proceeding was not transcribed." *Id.* at 513, 916 A.2d at 366.

The Court of Special Appeals held:

"The unclear and inexplicable circumstances surrounding the pedigree and disposition of State's Exhibit # 4 present different potential deprivations of appellants' rights. We cannot know whether appellants were denied the right to be present at a time—clearly a critical stage of the proceedings—that the court considered and responded to the jury note. We are further not aided by the affidavits submitted by counsel indicating that they have no recollection of the existence of—or response to—the note, or by the court's affidavit indicating that it would have routinely advised the jury that it should rely on its recollection of the evidence and that the disposition of the note may have been transcribed during another court proceeding.

\* \* \*

"We hold that the failure to afford appellants the opportunity to be present *when or if* the court disposed of the note in the case at hand constituted error under *Denicolis*. But, in this case, where we cannot know whether the court acted at what would have undisputedly been a 'critical stage,' *the mere failure of the jury to receive a response to its communication denied appellants' rights*. Stated otherwise, even if *Denicolis* were arguably not implicated, an equally significant right is denied."

*Id.* at 515–16, 916 A.2d at 368 (emphasis added).

I agree with the Court of Special Appeals that the petitioner meets his burden of proving error when he or she shows that

a jury communication, clearly intended to, but does not, reach the court, has been collected and "appears" in the court file by the court. The burden then shifts to the State to show the error was harmless, or, to negate the petitioner's original proof.

A judge's statement that he cannot recall receiving the note does not negate, nor should it, the other evidence of receipt, especially when, as here, it is quite likely that the judge, for whatever reason never did receive the note. It is well to remember in this regard that the Rule refers to the "court," not the judge. While the judge may be the personification of the "court," "court" is broader, referring to all personnel and actors, who collectively perform judicial functions and effect judicial proceedings. The judge is not entitled to an inference or presumption that he or she acted consistently with the Rule, and without error, simply because he or she does not receive or fails to recall ever receiving, a note that is nevertheless shown to be, and, therefore, appears, in the court file. To hold otherwise would be to absolve the court for the errors of its staff even when they result in a violation of a defendant's rights. It would avoid accountability for the errors of that staff. The court has oversight of its staff and, therefore, is answerable for the actions of those who act on its behalf. When the only evidence is that a note is in the file, along with all the other notes clearly received from the jurors, the petitioner has met his burden of showing that the note was received by the court. When it also shows, as the evidence does here, that the defendant was not notified of the note, he establishes error.

As noted by the majority, the note here "pertained to the action," as required by Rule 4–326(d), and addressed an important aspect of the case. Jury deliberations spanned seven hours. Three other notes were submitted, indicating that the jury was unclear as to the definition of crucial terms, such as "fellatio," and unclear as to what exactly was the testimony of the key witness, Kayla, the victim of the alleged abuse. The note at issue solicited "suggestions" as to how to proceed in the face of a potential deadlocked jury. Such a

communication would have been highly relevant to the petitioner and therefore did not amount to harmless error.

I dissent.