722 A.2d 65

Lisa **TAYLOR**

v.

**STATE of Maryland.**

**No. 93, Sept. Term, 1997.**

Court of Appeals of Maryland.

Dec. 24, 1998.

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

BELL, Chief Judge.

The sole issue in this case is whether a trial court's communication, in violation of Maryland Rule 4–326(c),[1] with the jury during a stage of trial, the defendant's right to be present not having been waived in accordance with Rule 4–231,[2] is harm-

---

1. Maryland Rule 4–326(c) states, "The court shall notify the defendant and the State's Attorney of the receipt of any communication from the jury pertaining to the action before responding to the communication. All such communication between the court and the jury shall be on the record in open court or shall be in writing and filed in the action."

2. Maryland Rule 4–231 provides:
 (a) *When presence required.* A defendant shall be present at all times when required by the Court. A corporation may be present by counsel.
 (b) *Right to be present-Exceptions.* A defendant is entitled to be present at a preliminary hearing and every stage of trial, except (1) at a conference or a argument on a question of law; (2) when a nolle prosequi or stet is entered pursuant to Rules 4–247 and 4–248; or (3) at a reduction of sentence pursuant to Rules 4–344 and 4–345.
 (c) *Waiver of Right to be Present.*—The right to be present under section (b) of this Rule is waived by a defendant:

less error. The Circuit Court for Baltimore City found that it was and the Court of Special Appeals affirmed in an unreported opinion. We granted certiorari to address the issue. For the reasons that follow, we shall reverse.

## I.

The facts pertinent to the resolution of this case are not in dispute. Lisa Taylor, the petitioner, was charged, along with a co-defendant, Jesse Ervin, with various drug offenses, including conspiracy to distribute heroin and possession of heroin with the intent to distribute. They were tried by a jury, which returned a verdict convicting the petitioner of both the conspiracy and the intent to distribute counts. The trial court subsequently sentenced the petitioner to a total of ten years imprisonment, to be served without parole. It is what occurred prior to the jury rendering a verdict that is at the heart of this appeal, however.

During jury deliberations, the jury submitted to the court "a two page list of questions," to which it sought answers. Without giving the notice required by Rule 4–326(c) and in the absence of the State and both of the defendants and their counsel, the court communicated with the jury as follows:

THE COURT: The record should reflect, first of all, that none of the defendants and/or the attorneys are present in the courtroom, and I received a two-page list of questions. The first reads as follows:

"What is the law or procedure for entering a home without a warrant," and under that: "For example: The police search someone in their yard that they suspect has drugs on them, and they don't find anything on them, can they enter a home without a warrant if they suspect there could be drugs

(1) who is voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain; or
(2) who engages in conduct that justifies exclusion from the courtroom; or
(3) who, personally or through counsel, agrees to or acquiesces in being absent.

in there?" And in parenthesis, "If they did go in and find drugs but didn't have a warrant or probable cause for going in, then would the case be thrown out?"

Ladies and gentlemen, let me explain this to you. Issues of probable cause, as I explained to you during the trial, are not for you to consider at all. They are strictly legal questions for the judge. They are questions of law. You are the triers of the fact. The judges are triers of the law. Issues regarding probable cause are not for your consideration at all. And the propriety or the correctness of whether or not the police went into a home is not for you to consider.

Question Number Two reads: "Why didn't [Officer] Pelekakis testify?' "

Ladies and gentlemen, you are to decide the case based on the evidence that was brought before you, and during the trial juries are always going to have questions with respect to this witness, and why didn't this witness testify, why didn't another witness testify, but you are to decide the case based upon the testimony that came before you. And that's not an issue for you to consider in your deliberations.

Number three reads: "What happens to a person when they are convicted a third time for drug dealing; do they get a really bad sentence?"

Ladies and gentlemen, issues of disposition are also strictly for the judge. The issues that you decide are the issues on that verdict sheet. You are to make a decision as to each defendant, looking at them separately from the issue of conspiracy to distribute heroin, possession with the intent to distribute and possession of heroin. And those are the only issues for you to consider. The sentencing phase of the case is strictly up to the court. And in some cases juries participate in it, but not in this type of case. It's not for your consideration.

So, I am going to ask you to resume your deliberations. Madame Clerk, could you escort the jury back, and would

you make—I'll keep the questions, and if you would to escort them back into the jury room.

Subsequently,[3] the court informed the defendants and counsel of its communication with the jury:

THE COURT: The jury has a series of questions, and I didn't want to hold the jury deliberation up, so I entertained the questions and none of you were present. M's Brown was not present, Mr. Curran was not present, and obviously you were not nor were the clients in the courtroom.

"The first question was: 'What is the law of the procedure for entering a home without a warrant," and under that, "For example, if the police search someone in their yard that they suspect has drugs on them and they don't find anything on them, can they, the police, enter the home without a warrant if they suspect there could be drugs in there?" In parenthesis, "If they did go in and find drugs, but didn't have a warrant or probable cause for going in, then would the case be throwed out?'

I explained to the jury that issues regarding probable cause were not in our province. This is the same issue—Counsel if you need to talk, go outside. I explained to them that they were the triers of the fact. The judges were the triers of the law, and issues regarding probable cause were legal issues strictly for the court. I defined probable cause or them during the trial, and I reminded them during the trial I explained to them that probable cause was a legal issue that they were not to concern themselves with. It was not a matter that they should consider at all. It was a matter strictly for the judge.

The second question is: "Why didn't Pelekakis testify," and I told them that they had to try the case based on the evidence that was, in fact, introduced. And often times jurors have questions about why someone didn't testify, why

---

3. The court noted on the record that the jury questions were submitted a little after 10:00 o'clock, the petitioner's counsel was not contacted until "well after 11:00 o'clock," and counsel were "finally" assembled around 12:00 o'clock.

they weren't called, and I said, you have to try the case based upon the evidence that was introduced before you.

The third question was: "What happens to a person when they are convicted for the third time for drug dealing; do they get a really bad sentence?" And I explained to them that matters concerning disposition were strictly for the court, and for the judge or the judge, and not to b— and it was a matter that they were not to concern themselves with, and they were not to give any consideration to it.

Those were the issues that they presented. I gave this to Mr. Curran, and M's Brown 'and let them read, and explained to them exactly what I'm explaining to you and I want to make the questions a part of the court file but I held them until we could locate you.

"MR. CURRAN [counsel for the co-defendant]: May I inquire, were answers given to the jury in writing as well?

"THE COURT: No. They were answered, I answered the questions just as I did right now.

"MR. CURRAN: On behalf of Defendant Ervin, we would make an objection for the record. Rule 4–326(c) essentially requires, without any options, that counsel for both parties be brought in and advised of the questions, and participate in formulating the response before any response is given. We would make an objection to the procedure that the court engaged in. I'm sympathetic to the court's concern for moving answers to the jury as fast as possible, but the rule is just as abundantly clear and we would object respectfully for the record.

"THE COURT: M's Berlin?

"MS. BERLIN [Counsel for the petitioner]: I would also.

"THE COURT: All right. Well, anything further?

"MS. BERLIN: No, Your Honor.

"THE COURT: Is there any objection to the responses that I gave to the jurors, the substance of it?

"MR. CURRAN: At this juncture, Your Honor, it is moot.

"MS. BERLIN: I have no objection to the responses just the procedure of it."

The petitioner moved for a new trial.[4] Denying the motion, the court, reasoned:

"With respect to Issue Number 12, it may have been error for me to instruct the jury or to advise the jury with respect to their questions, however the difficulty we had assembling everyone in this case and after the jury had been deliberating for sometime the first day, it was quite late, then the next morning we came back, Counsel's busy schedules, I took it upon myself to advise the jury with respect to their question, however, after doing so, I advised Counsel exactly what I had said. No objections were lodged at the point to anything I had proffered to the jury or instructed or advised the jury and also Counsel obtained transcripts and still there is no objection to anything I did say. So, consequently it must be harmless error."

The Court of Special Appeals affirmed the circuit court's judgment, agreeing that its *ex parte* communication with the jury, though error, was harmless. In its reasoning, it noted that neither the petitioner nor her co-defendant, contended, at trial or on appeal, that the trial court's responses to the jury's

---

**4.** Prior to filing the motion, the petitioner's counsel informed the court that she was not quite sure that the answer that she had previously given, that she was satisfied with the court's substantive answer to question number 1, was going to be the same in her motion for new trial. At the hearing on the motion for new trial, she adopted the argument made by her co-defendant:

"The other point that I would ask the Court to particularly concern itself with is Point 12 where the Court communicated to the jury in the absence of any notification to Counsel or any of the parties in this matter these communications which the Court later informed Counsel and Counsel then subsequently were able to inform their clients about was strictly in our view respectively in violation of what is required by Maryland Rule [4–] 326 [ (c) ] and the case law in *Allen* [*v. State,* 77 Md.App. 537, 551 A.2d 156, cert. denied, 315 Md. 692, 556 A.2d 674 (1989) ] and [*Eades v. State,* 75 Md.App. 411, 541 A.2d 1001 (1988) ] . . . and I ask the Court considering those two particularly what we feel are particularly strong reasons. . . ."

As is evident, at no time did she argue that the court's responses to the jury's questions were incorrect.

questions were not substantively accurate. The petitioner filed a Petition for Certiorari, which, as we have seen, this Court granted to address this important issue.

## II

It is undisputed—indeed the State concedes—that in communicating with the jury outside of the presence of the petitioner and her counsel, the trial court violated both Rule 4–326(c) and Rule 4–231. Despite the clear and unambiguous mandate of Rule 4–326(c) that it do so prior to responding to a communication from the jury, the trial court answered questions it received from the jury before notifying the petitioner of their receipt. This prescription is mandatory, not directory; see *Stewart v. State*, 334 Md. 213, 222, 638 A.2d 754, 758 (1994); nevertheless, the trial court completely and intentionally disregarded it.

Moreover, Rule 4–231(b) prescribes a defendant's right to be present at "every stage of his trial." [5] This Court has stated that "communications between the trial judge and the jury relating to the jury's verdict are generally considered stages of the trial when the defendant has a right to be present." *Bunch v. State*, 281 Md. 680, 685, 381 A.2d 1142, 1144 (1978). See *Stewart v. State*, 334 Md. at 224–225, 638 A.2d at 759 ("Any communication pertaining to the action between the jury and the trial judge during the course of the jury's deliberations is a stage of the trial entitling the defendant to be present."); *Midgett v. State*, 216 Md. 26, 36–37, 139 A.2d 209, 214 (1958) ("The constitutional guarantee [to the defendant of the right to be present at every stage of his trial] includes the right of the accused to be present ... when the court communicates with the jury in answer to questions propounded by the jury, or ... when there shall be any communication whatsoever between the court and the jury; unless the record affirmatively shows that such communica-

---

**5.** Maryland Rule 4–231(c) sets out the limited circumstances in which the right to be present is waived.

tions were not prejudicial or had no tendency to influence the verdict of the jury.").

 The State argues that, notwithstanding the trial court's violation of the Rules, the petitioner's convictions must be affirmed inasmuch as the trial court's error in communicating with the jury *ex parte,* and the concomitant denial of the petitioner's right to be present, was harmless. To be sure, it is now well settled that the harmless error principle is applicable to a violation of the criminal procedure rules,[6] *Noble v. State,* 293 Md. 549, 559, 446 A.2d 844, 848 (1982); *Wiener v. State,* 290 Md. 425, 450–51, 430 A.2d 588, 602 (1981); *Johnson v. State,* 283 Md. 196, 203, 388 A.2d 926, 930 (1978), including those at issue in the case *sub judice.* See *Noble,* 293 Md. at 556–59, 446 A.2d at 847–49 (former Rule 724 [Rule 4–326] ); *Stewart,* 334 Md. at 225, 227–28, 638 A.2d at 754, 760–61 (Rules 4–231 and 4–326). As to the defendant's right to be present at a stage of trial, which is closely allied with the defendant's right to be notified of a communication from the jury before the communication is responded to, see *Stewart,* 334 Md. at 225, 638 A.2d at 759, the *Noble* Court stated: "Prejudice will not be conclusively presumed. If the record demonstrates beyond a reasonable doubt that the denial of the right could not have prejudiced the defendant, the error will not result in a reversal of his conviction." 293 Md. at 568–69, 446 A.2d at 854.[7]

---

6. The Court has held to the contrary in the case of Maryland Rule 4–215, pertaining to the waiver of counsel. *Moten v. State,* 339 Md. 407, 409, 663 A.2d 593, 595 (1995)("We hold that under *Parren v. State,* 309 Md. 260, 523 A.2d 597 (1987), harmless error analysis is inapplicable to a violation of Maryland Rule 4–215(a)(3)").

7. This is the harmless error standard that this court adopted in *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976) (footnote omitted):

"[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence

*Noble* was a post conviction action in which the defendant alleged in his petition that he "had been denied his right under Maryland Rule 724 to be present at every stage of his trial because the voir dire questioning of a prospective juror had taken place at a bench conference which he did not attend." 293 Md. at 551, 446 A.2d at 845. The juror in question did not sit on the case, the court having struck the juror for cause. The post conviction trial court refused to grant relief for the violation of the defendant's right to be present at every stage of his trial, finding that, because the juror had been excused by the trial court, that error was harmless. *Id.* at 552, 446 A.2d at 845. This Court agreed with the post conviction court and, therefore, affirmed its judgment on that point.[8] We reasoned:

"When a defendant is absent from a stage of the trial involving the possible disqualification of jurors or prospective jurors for bias, and one or more of them are ultimately retained, it would normally be difficult to conclude that the violation of the defendant's right to be present was harmless."

*Id.* at 571, 446 A.2d at 855. That is be contrasted, we said, with the opposite situation, "when the prejudice or possible prejudice of a juror or prospective juror is against the defen-

complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict."

**8.** The defendant filed two applications for leave to appeal in the Court of Special Appeals, both of which the court granted. As to the first, the intermediate appellate court disagreed with the post conviction trial court's finding that any violation of the defendant's right to be present was harmless error, noting that "the Maryland Rules are precise rubrics to be read and followed," and remanded the case to the post conviction trial court to consider whether the defendant had waived his right to be present at the bench conference by "inaction." *Noble v. State*, 46 Md.App. 154, 156–57, 416 A.2d 757, 758 (1980). The second application for leave to appeal was filed following the completion of the proceedings on remand. As to it the Court of Special Appeals certified the case to this Court pursuant to former Rule 1015 (present Rule 8–115) to consider whether its opinion in *Noble* correctly stated the law with regard to waiver. The Court enlarged the certification application to include the harmless error issue. See *Noble*, 293 Md. at 552–54, 446 A.2d at 845–46.

dant, and that juror is excused at a proceeding from which the defendant is absent." *Id.* In this situation, "the defendant would not ordinarily be harmed [and] the court's ruling is entirely favorable to the defendant. Even if he were present, it is difficult to imagine what more the defendant could have obtained." *Id.* at 571–72, 446 A.2d at 855. The Court considered the defendant's proffered theory as to how his absence from the bench conference was prejudicial, but it found the record undermined that theory. *Id.* at 572, 446 A.2d at 855.

Three cases were critical to the Court's analysis: *Duffy v. State*, 151 Md. 456, 135 A. 189 (1926); *La Guardia v. State*, 190 Md. 450, 58 A.2d 913 (1948); *Midgett v. State*, 216 Md. 26, 139 A.2d 209 (1958). At issue in *Duffy* was whether, to obtain reversal of the conviction, a defendant whose right to be present at a stage of trial had been violated was required to show injury. 151 Md. at 473, 135 A. at 195. The Court answered in the negative, reasoning:

"It is true that the court certifies that the instructions, given in the absence of the prisoner, were the same as those given in his presence, but it also appears that the jury did not understand the instructions given in his presence, or they would not have asked for further instructions. What those instructions were, or what was written on the memorandum which guided the foreman in announcing the verdicts, does not appear in the record. It may be that it was a mere form of verdict and that it did not injure the defendant, but in dealing with an absolute constitutional right, the citizen ought not to be at the mercy of speculation as to whether the violation of it did or did not injure him. Since the jury did not understand the instructions as first given, it may have been that the prisoner, if present, when they were instructed a second time, would have asked that they be made clearer, or he may have objected to their form. They covered fourteen separate counts contained in four indictments, and they related, so far as he was concerned, to the most vital thing in the case, the verdict of the jury. If we held that under such circumstances he had no right to be

present, it is not easy to say under what circumstances his presence would be essential."

*Id.* at 476–477, 135 A. at 197. The *Noble* Court characterized *Duffy* as holding "that, if the record is silent as to prejudice resulting from a violation of the defendant's right to be present, an appellate court will not 'speculate' as to harm; instead prejudice will be presumed, and the conviction will be reversed." *Noble*, 293 Md. at 560, 446 A.2d at 849.

Supplemental jury instructions, given when the defendants were not present, were also at issue in *LaGuardia.* During their deliberations, the jury communicated with the trial court, asking "whether less than twelve jurors could recommend mercy for one of the defendants." 190 Md. at 458–59, 58 A.2d at 916. Notwithstanding that the defendants were not present, the court sent the jury a supplemental instruction informing it "that less that twelve could recommend mercy." *Id.* at 459, 58 A.2d at 917. While less than a majority of the jurors recommended mercy for one of the defendants, none made any such recommendation with respect to those defendants whose appeal the Court was considering. Rejecting the defendants' argument that giving the supplemental instruction in their absence was reversible error, the Court stated:

"We hold that if the record shows affirmatively that the appellant was prejudiced by an improper communication of the judge with the jury, there is reversible error; and also that if the record shows error by such communication, but does not show whether or not the error was prejudicial, it is presumed to be prejudicial and requires a reversal.... On the other hand, if the record shows affirmatively that the communication had no 'tendency to influence the verdict' (*Duffy v. State,* 151 Md. 456, 474, 135 A. 189, 195), the judge's impropriety in communicating with the jury out of the presence of the defendant does not require a reversal."

*Id.* at 458, 58 A.2d at 917.[9] In this case, we decided that the communication, "had no direct relation to the verdict whatever

---

**9.** The *Noble* Court noted that this "harmless error standard is, in substance, the same as the general test for harmless error in criminal

and no possible indirect constraining violation." *Id.* at 459, 58 A.2d at 917. Therefore, we determined that the record did affirmatively demonstrate that the communication did not have a tendency to influence the verdict.

The supplemental instructions in *Midgett* were given in response to two notes, one from the jury foreman and the other from the jury. The defendant was not present when the court responded to the notes, although his counsel was when one of the notes was answered. Reversing the defendant's conviction, the Court held that the defendant's right to be present on the two occasions when the trial court undertook to answer the jury's questions had been violated. It pointed out further, citing both *LaGuardia* and *Duffy,* that the constitutional right to be present at every stage of trial

"includes the right of the accused to be present (i) when the jury is charged or instructed on the facts, the law or the form of the verdict, before it has begun its deliberations or afterwards upon its request or by direction of the court; (ii) when the court is repeating a charge or instruction previously given in whole or in part; (iii) when the court communicates with the jury in answer to questions propounded by the jury, or (iv) when there shall be any communication whatsoever between the court and the jury; unless the record affirmatively shows that such communications were not prejudicial or had no tendency to influence the verdict of the jury."

216 Md. at 36–37, 139 A.2d at 214. "[T]he *LaGuardia* and *Midgett* cases," the *Noble* Court observed, "held that, if the record affirmatively shows that the denial of the right to be present at a stage of a criminal trial did not prejudice the defendant, the error would be deemed harmless." 293 Md. at 563, 446 A.2d at 851.

Prior to the decision of the Court of Appeals in *Noble,* both the Court of Appeals and the Court of Special Appeals had

---

cases," citing *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976).

accepted the argument that a violation of the right to be present during a stage of trial can never be harmless error. *State v. Saul*, 258 Md. 100, 265 A.2d 178 (1970), affirming *Saul v. State*, 6 Md.App. 540, 252 A.2d 282 (1969); *Young v. State*, 5 Md.App. 383, 247 A.2d 751 (1968). Because *Saul* was decided contrary to *Noble*, it was overruled. *Noble*, 293 Md. at 567, 446 A.2d at 853. The Court treated *Young* somewhat differently, however. Rather than overrule it, the Court simply disapproved its "harmless error" discussion and reserved judgment on the correctness of the result. *Id.* at 569 n. 9, 446 A.2d at 854 n. 9. Nevertheless, and significantly, it observed:

"the defendant's absence during the supplemental jury instruction in *Young* arguably may not in fact have been harmless under the test set forth in *La Guardia*, *Midgett* and *Dorsey*. Unlike the situation in *La Guardia* and *Saul* where the supplemental 'instructions' were given in writing, in *Young* the jury was returned to the box and orally instructed in the courtroom. Under these circumstances it could be contended that, regardless of the correctness of the instruction or the fact that the defendant was convicted of a different offense, he was nevertheless deprived of the benefit of facing the jury when it was in the box being instructed on the law. If present he may 'have produced an impression upon the jury favorable to himself.' "

*Id.*, quoting *Maurer v. The People*, 43 N.Y. 1, 5 (1870). It appears, therefore, that the Court recognized a distinction between supplemental instructions given in writing and those given orally. The record in the latter case is, the Court suggests, considerably more ambiguous than in the former. And, of course, an ambiguous record does not affirmatively show anything and, consequently, can not support an harmless error argument.

Our decision in *Stewart*, is also instructive and, moreover, its analysis is consistent. There, after the jury had begun its deliberations, the trial judge, having been informed of a problem with one of the jurors, without notifying either the defense or the State and, thus, in their absence, went to the jury room where he was handed a note, from one of the jurors,

expressing the need to talk to him. 334 Md. at 217, 638 A.2d at 756. Although reluctant to do so, the judge spoke with the juror outside of the jury room door, after he observed her visibly upset and crying. After the juror informed the judge that she was "afraid she was going to say something she shouldn't say to one of these other jurors." *id.*, the judge asked her to return to the jury room and "exercise her best judgment as to how her duty should be discharged." When informed of the *ex parte* communication, the defendant moved for a mistrial, which was denied. The jury subsequently convicted the defendant. This Court reversed, stating that "the record here demonstrates that Stewart was prejudiced by the judge's errors."

Not all of the Court's stated rationale for its conclusion did that, however; only that portion of the Court's opinion in which it discussed the law pertaining to the propriety of the giving of supplemental instructions to a single juror and the required elements of an *Allen* charge [10] demonstrated prejudice to the petitioner and that was because they were erroneous.[11] The remainder of the Court's explanatory comments, i.e.

---

**10.** *Allen v. United States,* 164 U.S. 492, 501, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896).

**11.** In that regard, the Court stated:

"It was clearly prejudicial for the judge to further instruct one juror rather than the entire panel. We are aware of no authority that authorizes a judge to instruct or give additional instructions to other than the entire panel duly assembled in the presence of the defendant and his counsel pursuant to the dictates of Rule 4–326(c) and Rule 4–231. See Rule 4–325 (Instructions to the Jury). Further, the substance of the judge's conversation with the juror, as described by the judge, prevents the error from being harmless.

"Surely, the trial judge's motive in urging the recalcitrant juror to "go back and continue deliberating and exercise her best judgment as to how her duty should be discharged" was to obtain unanimous verdicts of the jury on the offenses charged. This supplemental instruction was improper even had it been given to the entire jury. It was in the nature of an *Allen* charge, but was so foreshortened as to be woefully inadequate. We have approved an instruction that closely follows the language of 15–4.4 of the American Bar Association Standards for Criminal Justice (1978, 1986 Supp.), 'provided there is

"The eleven other jurors, who remained in the jury room when Rubin stalked out 'audibly sobbing and crying' were not made aware on the record of what occurred while Rubin was out of their presence. We, of course, do not know what Rubin said to the other jurors when she returned, or how she explained her actions, and we do not know how the remainder of the panel reacted to her conduct. The judge expressed a belief that the jury was divided, but we have no way to ascertain which side Rubin was on. Furthermore, Stewart's absence at the meeting between the judge and Rubin precluded him from having 'input' in the judge's response to the juror's conduct. Stewart may have had other suggestions as to how the situation could be handled, for example that the trial be continued upon agreement with eleven jurors. No matter how innocent the motives of the judge may have been, and no matter what may have actually been said to the juror (the conversation here was not recorded), the mere opportunity for improper influence in Stewart's absence prejudiced him. Stewart was denied the chance to evaluate the distress of the juror and the judge's solution to the problem and make such objection and suggestions as he deemed to be advisable. It may be that what the judge said to the juror was no more than a repetition of a part of his instructions to the entire panel before the jury retired. Even so, Stewart was entitled to be present[,]"

*id.* at 228–29, 638 A.2d at 761, quoting *Midgett,* 216 Md. at 36, 139 A.2d at 214, does no such thing; those comments simply demonstrate, by pointing out what the defendant may have been able to do had he been present and that there was an opportunity for improper influence, why the record is not dispositive or conclusive on the issue of prejudice. In other words, rather than demonstrating prejudice, the Court was, in

---

no deviation in substance from the language of that standard.'... What the judge here said to Rubin in no way met the requisites of the instruction we have indicated would be proper to give a jury having difficulty reaching a verdict."
*Stewart v. State,* 334 Md. 213, 229–30, 638 A.2d 754, 761–62 (1994).

reality, recognizing that the record did not show affirmatively, as *Noble* requires, that the petitioner was not prejudiced.

### III

It is undisputed that it was error for the trial court to reinstruct the jury in the absence of the petitioner and counsel. The only question is whether the error was prejudicial. As the beneficiary of the error, the State has the burden of establishing that it was not prejudicial. *Dorsey v. State*, 276 Md. 638, 658, 350 A.2d 665, 678 (1976). It sought to shoulder that burden by establishing that, in the instant case, the trial court's responses were substantively correct. But that is neither dispositive nor enough. A reversal of the petitioner's conviction is required unless the record demonstrates that the trial court's error in communicating with the jury *ex parte* did not prejudice the petitioner. The State has failed to meet that burden, inasmuch as the record in this case does not demonstrate that the error was benign or, at least, its lack of prejudice.

In response to questions from the jury, which then was deliberating, and without notifying the petitioner, as the Rules require, the court brought the jury into open court and orally answered their questions. While the answers it gave were substantively correct, the record does not reflect, as indeed it could not, all of the circumstances necessary to be considered in determining whether the petitioner was prejudiced by his, and in this case, his counsel's absence. What the record does show, and graphically so, is that neither the petitioner nor his counsel had any input, or even any opportunity to have input, in the answers the jury received. The questions asked by the jury were in some ways fact-bound. The petitioner might well have asked the court to make the response clearer, or objected to the form of the response. *See Duffy v. State*, 151 Md. 456, 476, 135 A. 189, 197 (1926)(noting that the defendant, if present, may "have asked that [the supplemental instructions] be made clearer, or he may have objected to their form"). Even more apparent is the fact that, by virtue of their absence, neither was able to protect the record, insure that

the petitioner's rights were not compromised and that his case was not prejudiced. To be sure, when the supplemental jury instructions are substantively accurate, the petitioner may not be able, as in *Stewart*, to show prejudice affirmatively from the fact of the violation of the right to be present; however, neither does that fact mean that the record clearly shows a lack of prejudice resulting from that violation. On the contrary, at best, that circumstance renders the record silent on the issue so that prejudice will be presumed. *Noble*, 293 Md. at 560, 446 A.2d at 849. Something more is required of the State than to establish the accuracy of the reinstructions the court gave. Indeed, to hold, as the State espouses, that a violation of the Rules giving effect to a defendant's right to be present at every stage of trial can be cured simply by giving a substantively accurate instruction, would render those Rules totally meaningless. Certainly the harmless error principle in the context of rules of practice was never intended to have that effect.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.