53 A.3d 1171

**STATE of Maryland**

v.

**Thomas B. HARRIS.**

No. 22, Sept. Term, 2010.

Court of Appeals of Maryland.

Sept. 27, 2012.

---

702

Ryan R. Dietrich, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Petitioner/Cross–Respondent.

Brian T. Edmunds, Assigned Public Defender, Washington, D.C., for Respondent/Cross–Petitioner.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY,* ADKINS and BARBERA, JJ.

BELL, C.J.

Thomas B. Harris, the respondent, was convicted by a jury in the Circuit Court for Baltimore County of second-degree depraved heart murder. He appealed his conviction to the Court of Special Appeals, where he argued, *inter alia*,[1] that

---

\* Murphy, J., now retired, participated in the hearing and the conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

1. The respondent also argued that the trial court erred when it denied his motion for judgment of acquittal based on insufficiency of the evidence. The Court of Special Appeals rejected that argument, concluding instead that the evidence in question "afforded the jury a basis

the trial court's failure to disclose to him a communication between a juror and the judge's secretary violated Maryland Rule 4–326(d),[2] requiring reversal of his conviction. The intermediate appellate court agreed: it reversed the conviction, *Harris v. State*, 189 Md.App. 230, 255, 984 A.2d 314, 329 (2009), holding that the Circuit Court committed reversible error when it failed to disclose, in accordance with Rule 4–326(d), the communication, and remanding the case to the Circuit Court for a new trial. We shall affirm the judgment of the intermediate appellate court.

## I.

The respondent was charged with second-degree specific intent murder and second-degree depraved heart murder in the killing of Karim Cross. Subsequent to the empaneling and swearing of the jury, juror No. 7 ("the juror"), informed the trial court of a concern he had about serving on the jury, explaining that his grandmother had been hospitalized, and did not have long to live. That exchange, between the court, the juror, defense counsel and the Assistant State's Attorney, proceeded, as follows:

"THE JUROR: Now can I ask my question?[3] My grandmother went in the hospital. She's 89 years old and it was last Wednesday. They don't expect her to live. I think they don't expect—she fell and punctured her lung and then

---

to conclude beyond a reasonable doubt that Harris was guilty." *Harris v. State of Maryland*, 189 Md.App. 230, 255, 984 A.2d 314, 329 (2009). This issue has not been raised in this Court.

2. Maryland Rule 4–326(d) provides:

"*Communications with jury.* The court shall notify the defendant and the State's Attorney of the receipt of any communication from the jury pertaining to the action as promptly as practicable and in any event before responding to the communication. All such communications between the court and the jury shall be on the record in open court or shall be in writing and filed in the action. The clerk or the court shall note on a written communication the date and time it was received from the jury."

3. He apparently had attempted to raise the issue during voir dire, but was asked by the judge to wait.

they're finding stomach fluids from where they were draining so they think she had a puncture in the stomach. She was going in today for an operation, and they don't expect her to live. I just don't know if there will be a funeral.

"THE COURT: Okay.

"THE JUROR: She's 89. That was the only thing. If there's no funeral, then I'm fine being her[e].

"THE COURT: Right. Do you recall my asking you a question about your ability to serve?

"THE JUROR: I thought it was something else to it, like, because then you continued that thought.

"THE COURT: All right . . . Any questions?

"[ASSISTANT STATE'S ATTORNEY]: No, sir.

"[DEFENSE COUNSEL]: Just, sir, that being concerned about your grandmother, would you have to leave, or would your energies and focus be on what's going on with your grandmother or your family?

"THE JUROR: When they took my cell phone today, I was concerned because I lost contact. You know, I was waiting to hear, and, like I said, if something happens, I would want to go to the funeral. If I had a chance that they said it looked like it was the end coming, I would . . . like to be able to go before that.

"THE COURT: We can certainly provide you with a contact number to give your family so even though you don't have a cell phone they could contact my chambers, and they'll get a message to you immediately.

"THE JUROR: That works, if I can still go in the evening. If they call, the[y] will come get me?

"THE COURT: Yes.

"THE JUROR: Okay.

"THE COURT: Thank you so much."

Two days later, after being instructed as to the evidence and the applicable law and hearing closing arguments, the jury was dismissed for lunch. During the luncheon recess, the judge's secretary received a call from the juror's father,

informing her that the juror's grandmother had passed away. Without notifying counsel of that communication,[4] and, therefore, outside their presence, the secretary spoke to the juror and, after informing the juror of his grandmother's death, inquired whether he was alright to continue. The juror answered that he was, assuming that he would soon be finished with deliberations. As indicated, neither the defense nor the State was informed of this communication. Soon thereafter, before deliberations began, the alternate jurors were dismissed.

Shortly after the jury had begun its deliberations, the juror sent a note to the court, asking that he be excused. That note prompted the following colloquy between the court and defense counsel:

"THE COURT: Please be seated. I have received another communication. This time from Juror No. 7 seated in Seat 6. It says, Judge, may I be excused from jury duty for family preparations? His grandmother passed away earlier today, but let me read to you what's in his message.

'Judge, may I be excused from jury duty for family preparations? If you can exchange me for an alternate jury member without disrupting anything, that will be great. If it is a big deal, please discuss with me. Thank you.' He signs it.

One of my staff was contacted by one of his family members to tell him about the death of his grandmother, and we inquired whether he would be able to continue, and he said he would be able to continue. That discussion took place prior to my discharging the alternates.

Now we have this letter.

"[DEFENSE COUNSEL]: . . . I wish I had known about the communication earlier because maybe we would have decided to go ahead and replace him anyway because, as you recall, when we were doing voir dire, he did seem to

---

4. It is likely that the court was advised, as its comments, made during the hearing to consider the juror's request to be excused, when his secretary was being questioned by counsel, indicate.

express some hesitation and concern that he could go and visit his grandmother at night, but he did have some concern that this could happen.

I would say that I'm a little distraught that we didn't know about it sooner so that I could—so we could have replaced him with an alternate, which would have been my suggestion.

"THE COURT: Of course, at the time he said he was fine to continue.

"[DEFENSE COUNSEL]: I know but we didn't know anything about the communication. That's what I'm trying to put on the record.

"THE COURT: I didn't either, I believe, until more recently.

"[DEFENSE COUNSEL]: My concern is that I don't want him rushing to make a decision because he wants to leave. I don't know if we can get any of the alternates so on behalf of Mr. Harris in light of this I think that it's unfair to ask this juror to continue, particularly when there's been a death in the family.

"THE COURT: All right."

Pursuant to the State's request for more information regarding the communication, the judge's secretary was questioned, after which the juror's request was considered and decided:

"[SECRETARY]: I'm Jennifer Stalfort, Judge Finifter's secretary. [The juror]'s father called and informed me that his grandmother had just passed. I asked—I thought he would like to speak to his son so I had his son speak to him and then I asked—it was a short conversation.

He told his fa[ ]ther that he would soon be finished he thought, and I asked him. When he was finished, I said, are you all right to continue? He said, yes, he was.

"[DEFENSE COUNSEL]: When did that communication happen?

"[SECRETARY]: Before lunch.

"[DEFENSE COUNSEL]: After closing argument?

"[SECRETARY]: [The juror], would probably know that. I'm trying to think. Yes. Because he was in the jury room. He was in the jury room, but they hadn't started to deliberate. They weren't all back.

"[DEFENSE COUNSEL]: But it was after they were discharged?

"THE COURT: No. Before they were discharged. Before he was discharged. The alternates.

["DEFENSE COUNSEL]: No. But the jury had been discharged at that point.

"THE CLERK: To get lunch.

"[DEFENSE COUNSEL]: They went to get lunch; in other words, we were finished with everything here in the courtroom as far as closing arguments and instructions, and the jury had been discharged. They were allowed to go get lunch and were directed to bring it back. Once all of them were back, then they would begin their deliberations so I think the point was that they had been discharged.

"THE COURT: Discharged.

"[ASSISTANT STATE'S ATTORNEY]: Had they begun deliberating?

"THE CLERK: No. They had not.

"[ASSISTANT STATE'S ATTORNEY]: The door wasn't closed?

"[SECRETARY]: No. I went back to see and ask was he there. I had [unidentified court personnel] ask for him. They were not all back. They were actually quite slow, some of them, in coming back.

"[ASSISTANT STATE'S ATTORNEY]: At this point—I don't know, if the [court] is opposed to or objecting to any motion for mistrial?

"THE COURT: Are you finished?

"[ASSISTANT STATE'S ATTORNEY]: Yes. Thank you.

"THE COURT: Thank you.

"[ASSISTANT STATE'S ATTORNEY]: He did say he could continue.

"THE COURT: All right.

"[ASSISTANT STATE'S ATTORNEY]: Maybe—I don't want to give a time period, but, if this continues for some length of time, maybe there will be another communication of a different nature, but at this point since he said he would be okay, I would ask that they continue.

"[DEFENSE COUNSEL]: But their [sic] note now says he's not okay.

"THE COURT: It doesn't say that.

"[DEFENSE COUNSEL]: Well, it says that he wants to get out of jury service.

"THE COURT: It says, if you can exchange me for an alternate jury member without disrupting anything, that will be great.

"[DEFENSE COUNSEL]: So he's asking to be relieved.

"THE COURT: He's saying, if you can exchange me for an alternate jury member without disrupting anything that would be great. Implying he's fine otherwise. If it is a big deal, please discuss with me. I don't think he's saying he can't serve.

"[ASSISTANT STATE'S ATTORNEY]: I would ask him to continue given the circumstances.

"[DEFENSE COUNSEL]: Judge, I would ask for a mistrial based on the jury communication and this juror's— what I would characterize as a request to be replaced; thus inferring that he wants to leave."

The juror was not discharged. Having denied the respondent's motion for mistrial, the judge responded to the juror's note by stating, simply, "I cannot excuse you."

A few hours later, the jury sent another note, stating that it had reached an unanimous verdict on the specific intent count, but was deadlocked on the depraved heart count. The court instructed the jury to continue deliberating. Later that day, the jury returned a verdict: it acquitted the respondent of second-degree specific intent murder, but convicted him of second-degree depraved heart murder. The respondent

moved for a new trial, based, in part, on the undisclosed communication between the juror and the judge's secretary.[5] That motion was denied and the respondent was sentenced to a term of 15 years in prison.

As we have seen, the Court of Special Appeals, to which the respondent noted an appeal, reversed the judgment of the Circuit Court and remanded the case for a new trial, holding that "the trial court erred when it refused to grant a mistrial after it failed to promptly disclose the juror's communication with the judge's secretary." *Harris v. State*, 189 Md.App. 230, 255, 984 A.2d 314, 329. The State filed a petition in this Court for a writ of certiorari, which we granted,[6] *State v. Harris*, 412 Md. 689, 990 A.2d 1046 (2010). It presents for our consideration the following question:

"Did the Court of Special Appeals err in finding that the trial court abused its discretion in refusing to declare a mistrial after informing the defendant of an innocuous communication between the judge's secretary and a juror?"

---

**5.** The respondent also asserted that "[t]he verdict is against the weight of the evidence," that "[t]he evidence is insufficient in law to sustain the verdict," and alleged "[b]ias and disqualification of jurors," "[m]isconduct of the jurors or those court personnel exercising control over the jurors," "error relating to admissibility of negative photographic arrays and investigation of the crime by the police," that "the jury was not capable of rendering a fair and impartial verdict based solely on the evidence in trial," as well as "[a]buse of argument."

**6.** The respondent filed, in response to the State's petition, a conditional cross-petition, in which, noting "the Court of Special Appeals' holding against him on the sufficiency of the evidence and ... its failure to reach the other issues he raised in his appeal," he asked the Court, in the event it agreed with the State on the improper communication issue, to address other errors that he maintained were committed by the Circuit Court. Specifically, he identified those errors as the trial court's: "fail[ure] to investigate adequately the bereaved juror's frame of mind to ensure that he could deliberate properly," "refus[al] to admit substantial and material exculpatory evidence indicating that Mr. Harris had not, and others had, been identified at the scene," and giving of "a jury instruction on identification evidence that misstated and conflicted with the evidence the State actually presented." In light of our resolution of the State's petition, we do not reach the issues raised by the respondent.

We shall affirm the judgment of the Court of Special Appeals, and hold that the Circuit Court should have disclosed the communication between the judge's secretary and the juror. Its failure to do so was error, in violation of Rule 4–326(d).

## II.

Rule 4–326(d) prescribes the manner in which jury communications are to be handled. It provides:

"(d) *Communications with jury.* The court shall notify the defendant and the State's Attorney of the receipt of any communication from the jury pertaining to the action as promptly as practicable and in any event before responding to the communication. All such communications between the court and the jury shall be on the record in open court or shall be in writing and filed in the action. The clerk or the court shall note on a written communication the date and time it was received from the jury."

The crux of the State's argument is that Rule 4–326(d) was not violated by the trial court because the communication at issue, between the judge's secretary and the juror, did not "pertain[ ] to the action." The State distinguishes between communications that originate with the court and involve general inquiries, and communications that originate with the jurors and address trial issues or a juror's ability to serve. The latter, it submits, is the sort of communication that falls within the reach of Rule 4–326(d): it is, in accordance with the language of the Rule, a "communication *from* the jury," and, thus, requires the court to formulate a response. The former, communications that originate with the court, by contrast, do not require a response, and therefore, are not covered by the language of Rule 4–326(d).

The State submits that, in this case, the communication in question falls within the former category. As the State sees it, "the exchange involved merely an administrative communication designed to further the orderly continuation of the proceedings." This is so, the State reasons, because the

exchange was not a formal examination of the juror's state of mind, but rather, "was designed simply to confirm the status quo ..., that the affected juror would return to continue deliberations." The State thus also would have us hold that a communication between a trial court and a juror, concerning a juror's willingness or ability to continue to serve, is an "administrative" one that does not fall within the ambit of Rule 4–326(d).

The State finally urges us to hold that, even if the communication at issue, between the secretary and the juror, did violate Rule 4–326(d), the error was harmless. In support of this proposition, the State points to the fact that, albeit later, the respondent was provided with the opportunity to respond to the juror's follow-up note.

Conversely, the respondent maintains that, pursuant to the unambiguous mandate of Rule 4–326(d), the trial court was required to disclose to counsel the communication between his secretary and the juror. He asserts and emphasizes that the principles underlying the Rule—a defendant's right to be present, as well as the preservation of fairness throughout the proceedings—were abridged when the trial court failed to inform counsel of the communication. The respondent rejects the State's argument that Rule 4–326(d) applies only to communications that originate with the jury, and not to communications directed to a juror by the trial court. In addition, the respondent submits that the communication between the trial judge's secretary and the juror in the case *sub judice* did pertain to the action, the State's argument to the contrary notwithstanding. We agree.

This Court consistently has recognized that "an accused in a criminal prosecution for a felony has the absolute right to be present at every stage of his trial from the time the jury is impaneled until it reaches a verdict or is discharged, and there can be no valid trial or judgment unless he has been afforded that right." *Midgett v. State*, 216 Md. 26, 36, 139 A.2d 209, 214 (1958). This well settled constitutional and common law right, as we have often recognized, is guaranteed by

Article 5 of the Maryland Declaration of Rights,[7] *see Bunch v. State*, 281 Md. 680, 683–4, 381 A.2d 1142, 1143 (1978); *Brown v. State*, 272 Md. 450, 457, 325 A.2d 557, 560 (1974), and, in some measure, by the Fourteenth Amendment to the United States Constitution.[8] It is also preserved by Maryland Rule 4–231.[9] It is, moreover, well settled that any communications between a judge and the jury which pertain to the action constitute just such stages of trial at which the defendant is entitled to be present. *See Taylor v. State*, 352 Md. 338, 345, 722 A.2d 65, 68 (1998); *Stewart v. State*, 334 Md. 213, 224–25, 638 A.2d 754, 759 (1994); *Bunch*, 281 Md. at 685, 381 A.2d at 1144. Indeed, the Supreme Court of the United States, too, has recognized that it is important, "especially in a criminal case," for the defendant "to be present from the time the jury

---

**7.** Article 5 of the Maryland Declaration of Rights states, in pertinent part:

"(a) (1) That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth Day of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circumstances, and have been introduced, used and practiced by the Courts of Law or Equity; and also of all Acts of Assembly in force on the first day of June, eighteen hundred and sixty-seven; except such as may have since expired, or may be inconsistent with the provisions of this Constitution; subject, nevertheless, to the revision of, and amendment or repeal by, the Legislature of this State."

**8.** The Fourteenth Amendment provides, in part, that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**9.** Rule 4–231 provides:

"(a) *When presence required.* A defendant shall be present at all times when required by the court. A corporation may be present by counsel.

"(b) *Right to be present—Exceptions.* A defendant is entitled to be physically present in person at a preliminary hearing and every stage of the trial, except (1) at a conference or argument on a question of law; (2) when a nolle prosequi or stet is entered pursuant to Rules 4–247 and 4–248."

is impaneled until its discharge after rendering the verdict." *Shields v. United States,* 273 U.S. 583, 589, 47 S.Ct. 478, 479, 71 L.Ed. 787, 790 (1927). Therefore, and in that regard, the Supreme Court has cautioned against a court receiving "a communication from the jury and answer[ing] it, without giving the defendant and his counsel an opportunity to be present in court to take such action as they might be advised...." *Id.,* 273 U.S. at 587, 47 S.Ct. at 479, 71 L.Ed. at 789.

■ Rule 4–326(d) codifies these principles by providing that a court is "obliged to notify the defendant and the State's Attorney of the receipt of [any juror or jury] communication before responding" to it. *Stewart,* 334 Md. at 222, 638 A.2d at 758. "These prescriptions are mandatory, not directory...." *Id.* We interpreted the Rule more recently in *Winder v. State,* 362 Md. 275, 322, 765 A.2d 97, 122–23 (2001), summarizing its mandate as follows:

> "The rules governing communications between the judge and the jury are basic and relatively simple to adhere to in practice. If a judge receives a communication from the jury or wishes to communicate with the jury, he or she is required to notify the parties. The communication with the jury shall be made in open court on the record or shall be made in writing and the writing shall become part of the record.... [A] defendant has a recognized right to be present during communications between the judge and the jury during ... trial. These rules are not abstract guides. They are mandatory and must be strictly followed."

(Citations omitted).

Moreover, we recently made clear that Rule 4–326(d) extends to communications between jurors and court personnel. *Black v. State,* 426 Md. 328, 342, 44 A.3d 362, 370 (2012). There, where the communication at issue was an unmarked jury note, which, although it was contained in the record, the trial judge indicated that he had never seen, *id.,* 426 Md. at 332, 44 A.3d at 365, we stated that "court," as contemplated by Rule 4–326(d), "includes the trial judge and all court personnel

who are subject to the direction and control of the judge, including, but not limited to, the courtroom clerk, the judge's law clerk, and the bailiff." *Id.,* 426 Md. at 342, 44 A.3d at 370. Accordingly, "receipt by the trial judge or any court personnel of a communication from the jury pertaining to the action at a time before the jury renders its verdict constitutes receipt within the meaning of Rule 4–326(d), and the mandates of the Rule are triggered at that time." *Id.*

Rule 4–326 (d), by its terms, requires that a communication "pertaining to the action" between the court and the jury be disclosed to counsel for both parties prior to a response being given to that communication. It is clear that the communication in this case, between the judge's secretary and the juror, falls squarely within the ambit of Rule 4–326(d). Here, the judge's secretary communicated with the juror [10] for the purpose of informing him of the phone call she had received from the juror's father, in which he related that the juror's grandmother had died. That was not the end of the communication, however. She went on to ask the juror if he was alright to continue. The subject of the communication— the health status of the juror's close relative, his grandmother, as well as the actual discussions—the disclosure of the fact that she had died and the juror's acknowledgment that he was alright to continue, issues discussed by the secretary and the juror, implicate and concern the juror's ability to continue deliberating. Clearly, therefore, at the very least, the latter

---

**10.** While the communication at issue was initiated by the court, as the State points out, it was prompted by the earlier communication with the juror, in which the juror's desire to be kept apprised of his grandmother's condition was discussed. As a result of that discussion, it was agreed that the court would accept calls from the juror's family and relay them to him. Accordingly, it may be argued that the origin of the communication was the juror. That fact, however, is not pivotal to our determination. In fact, we have interpreted the Rule as requiring that "[i]f a judge receives a communication from the jury *or wishes to communicate with the jury,* he or she is required to notify the parties." *Winder v. State,* 362 Md. 275, 322, 765 A.2d 97, 122 (2001). It is thus immaterial whether the communication is initiated by the court or the jury.

part of the communication—the inquiry as to whether the juror could continue—"pertain[ed] to the action."

 To be sure, a communication, from the court to a juror, passing along a phone message that the juror's grandmother had died, if that were all there was and when viewed in isolation,[11] could be deemed to be a personal matter and, therefore, because it would not "pertain[ ] to the action," in the same way that "the failure to disclose the contents of a note from a juror requesting transmittal of a purely personal message to a member of the jurors' family or to a babysitter," *Graham v. State*, 325 Md. 398, 415, 601 A.2d 131, 139 (1992), would not constitute error. On the other hand, it is important to remember that "the spirit of the Rule is to provide relevant information to those most vitally concerned with the trial. . . ." *Id.* Information that implicates, and may impact, a juror's ability to continue deliberation is relevant information that must be disclosed in compliance with Rule 4–326(d). That is especially so, where, as here, the juror suggests that his or her ability to continue is dependent upon a speedy conclusion of the trial.

*Stewart v. State*, 334 Md. 213, 638 A.2d 754, is instructive. In that case, we addressed a set of facts similar to those presented by the case *sub judice*. There, while the jury was deliberating, the trial judge received, from a juror, a note, in which the juror indicated that she wished to speak to the judge. *Id.*, 334 Md. at 217, 638 A.2d at 756. Without informing counsel of the receipt of the note, the judge spoke to the "upset and tearful" juror. *Id.* During the conversation, the juror informed the judge that "she was nervous and upset and

---

11. The death of a close relative is a tragedy of a nature which, under normal circumstances, affects the average person's ability to proceed normally with his or her daily affairs. Such a communication, thus, ordinarily will not be all there was and should not be viewed in isolation. Rather, it must be viewed in light of any initial discussion which may have contemplated such a communication. In this case, as we have seen, the juror informed the court and counsel of the importance to him of receiving information with regard to his grandmother's death, the effect that such information likely would have on him and how it might impact his status as juror.

afraid she was going to say something she shouldn't say to one of the other jurors." *Id.* In response, the judge "asked her to go back and continue deliberating and exercise her best judgment as to how her duty should be discharged," *id.,* 334 Md. at 218, 638 A.2d at 756, to which she agreed. We held that this communication "pertain[ed] to the action" and, thus, failure to disclose it violated Rule 4–326(d). *Id.,* 334 Md. at 233–24, 638 A.2d at 759. We explained:

> "The communication between Rubin and the trial judge surely 'pertained to the action;' it was during the course of a vital part of the trial. A juror's reluctance to continue to deliberate with the other jurors and separating from the other jurors by leaving the jury room cannot be divorced from the action. There is no question that the ex parte meeting between the judge and the juror was an erroneous procedure. But that did not stand alone. Stewart was not present during this discourse between the juror and the judge. He was in the lockup awaiting the return of the jury. He was not informed at that time of the communication from the juror and the judge's response thereto. The prosecutor was not timely notified, nor was defense counsel. The communication between the judge and the juror was not on the record in open court or in writing and filed in the action contemporaneously with its occurrence. It is clear that the failure of the trial judge to obey the commands of [the Rule] constituted error."

*Id.*

It is true, of course, that the juror in the case *sub judice* did not visibly display, or express, the level of distress shown by the juror in *Stewart.* The level of the juror's emotions, however, is neither the point nor the proper focus when the issue involves compliance with Rule 4–326(d). What is the point and the focus, as far as Rule 4–326(d) is concerned, are the circumstances under which the communication occurred and its subject. The communication in this case arose under similar circumstances and involved a similar, if not identical, subject, the ability of the juror to continue deliberating, as

that in *Stewart*. Accordingly, the analysis we applied in that case has resonance in this case.

Here, as in *Stewart*, this was an "ex parte meeting," not held in open court or on the record, of which the petitioner was not informed and at which he was not present, between the judge's secretary—a representative of the court—and a juror, concerning a matter impacting the juror's status as a juror. Though the communications addressed different subject matters—the *Stewart* juror was communicating about a matter that involved the deliberations themselves and her ability to participate in them, while here, the subject was one personal to the juror—they both implicated the effectiveness of the juror's continued service. Indeed, the impact on the proceedings of the information disclosed to the juror may have been greater in the instant case. This analysis leads us to conclude that the trial court erred when it failed to disclose earlier the communication that took place between the judge's secretary and the juror.

The State argues that the communication in question was simply "an innocuous, compassionate response to the affected juror's loss," and, thus, did not "pertain to the action" as required by Rule 4–326(d). We do not agree. The communication entailed, and addressed, much more than an expression of compassion. To be sure, part of the secretary's communication to the juror was to notify him of the death of his grandmother. That was done in response to the juror's request, made in open court, shortly after having been seated as a juror, that he be informed of the condition of his grandmother, whom he reported to be in extremely bad health at that time, as her passing might interfere with his ability to continue to serve. The other part of the communication was the secretary's inquiry into the juror's ability to continue his jury service. This was not simply a confirmation of the status quo, as the respondent suggests. Nor was the secretary's question, "are you all right to continue," simply a general "compassionate response." It was, in fact, a specific question regarding the juror's ability to continue serving and deliberating. This communication undoubtedly "pertained to the trial,"

because it concerned the juror's ability to perform his duty—to make a decision concerning the guilt and, ultimately, the freedom of the defendant.

With the death of the juror's grandmother, the circumstances surrounding the juror's participation in the deliberations had changed, and had done so in a manner that the juror had, prior to the commencement of the trial, informed the court could create just such a problem. Given the juror's expressed concern about his grandmother's death and the impact her funeral would have on him—he specifically stated that he wanted to go to the funeral—when the court was notified of the death of the juror's grandmother, the trial court was obligated to inform not only the juror, but counsel as well, so that they could have input with regard to how the situation should be handled.

The Court of Special Appeals, responding to the State's argument that the communication was "an innocuous, compassionate response to the affected juror's loss" which did not pertain to the action, stated:

"[W]e believe the inquiry clearly related to the juror's ability to deliberate. The trial judge described the conversation to counsel in these terms: 'we inquired whether the juror would be able to continue, and he said he would be able to continue,' and then said, 'the juror said he was fine to continue.' "

*Harris,* 189 Md.App. at 246, 984 A.2d at 324. The intermediate appellate court further explained:

"We recognize that the juror-court communication in this case does not reach the level of error present in *Stewart.* In *Stewart,* the visibly upset juror walked out of the jury room and told the judge that she was reluctant to continue deliberating with other jurors, and the judge failed to promptly disclose that to counsel and instructed the juror to continue deliberating. Here, in contrast, the juror indicated that he could continue deliberating. The record here contains no evidence that, outside the presence of defense counsel, the judge or his staff actively encouraged the juror

to continue or acted with anything but the best of intentions. Rather, the record indicates that the court merely allowed him to continue deliberating. However, the purpose of Rule 4–326(d) is to provide an opportunity for input in designing an appropriate response to each question in order to assure fairness and avoid error. Although the juror responded 'yes' that he was 'okay to continue,' it was not merely a confirmation of the status quo. The circumstances had changed from the beginning of the trial. The juror's grandmother had died. Indeed, not long after answering that he could continue, the juror requested to be excused. Counsel should have been provided the opportunity to help the court determine whether the juror's frame of mind had changed."

*Id.,* 189 Md.App. at 247–48, 984 A.2d at 324 (internal quotation marks omitted) (citations omitted). We agree with this analysis. It follows that the court's failure to disclose the subject communication to counsel was error.

We also conclude that, because it prejudiced the respondent, this error requires reversal of the respondent's conviction. This Court has cautioned that the Maryland Rules "are not guides to the practice of law but precise rubrics 'established to promote the orderly and efficient administration of justice and [that they] are to be read and followed.'" *Isen v. Phoenix Assur. Co. of New York,* 259 Md. 564, 570, 270 A.2d 476, 479 (1970) (quoting *Brown v. Fraley,* 222 Md. 480, 483, 161 A.2d 128, 130 (1960)). As such, " '[a] violation of one of these rules constitutes an error, normally, requiring such curative action or sanction as may be appropriate.'" *Dove v. State,* 415 Md. 727, 742, 4 A.3d. 976, 984 (2010) (citing *Noble v. State,* 293 Md. 549, 557, 446 A.2d 844, 848 (1982)). The mandate of Rule 4–326(d) is unambiguous: "The court *shall* notify the defendant and the State's attorney of the receipt of any communication from the jury pertaining to the action ... before responding to the communication." *See Black,* 426 Md. at 341, 44 A.3d at 370. A failure to comply with its explicit mandate is error, and once such error is established, it only remains for this Court to determine whether that error was prejudicial to the defendant and, thus, requires reversal.

*Taylor v. State,* 352 Md. 338, 354, 722 A.2d 65, 72 (1998). "As the beneficiary of the error, the State has the burden of establishing that it was not prejudicial," and "[a] reversal of the ... conviction is required unless the record demonstrates that the trial court's error in communicating with the jury *ex parte* did not prejudice the [defendant]." *Id.,* 352 Md. at 354, 722 A.2d at 72–3. Stated differently, it is error for a trial court to engage in a communication with the jury, or jurors, off the record, and without notification to counsel, and that error is presumably prejudicial unless the State can affirmatively prove otherwise.

*Stewart, supra,* provides some guidance in this regard. There, we stated that the communication that occurred between the court and the juror, concerning the juror's ability to continue deliberations, not only violated the Rule, but also prejudiced the defendant. 334 Md. at 230, 638 A.2d at 762. Indeed, we stated that it was "the substance of the judge's conversation with the juror" itself that "prevent[ed] the error from being harmless." *Id.,* 334 Md. at 229, 638 A.2d at 761. Furthermore, we found it to be significant that the defendant, in that case, "was denied the chance to evaluate the distress of the juror and the judge's solution to the problem and make such objection and suggestions as he deemed to be advisable." *Id.* We explained:

"Stewart's absence at the meeting between the judge and Rubin precluded him from having 'input' in the judge's response to the juror's conduct. Stewart may have had other suggestions as to how the situation could be handled, for example that the trial be continued upon agreement with eleven jurors. No matter how innocent the motives of the judge may have been, and no matter what may have actually been said to the juror (the conversation here was not recorded), the mere opportunity for improper influence in Stewart's absence prejudiced him."

*Id.*

Likewise in the case *sub judice,* the trial court's failure to disclose the communication to the respondent resulted in

prejudice to the respondent. The State fails to carry its burden of proving otherwise. The death of the juror's grandmother created a significant risk that the juror in question, in an effort to be able to attend the funeral, which he expressed a strong desire to do, would rush to a decision. Additionally, not being aware of the communication when it occurred, counsel was not provided with the opportunity to evaluate the emotional state of the juror, nor to provide input on how to proceed. An evaluation of the juror's mental state, especially as it related to his ability to continue deliberating, was not the secretary's—or the trial court's—to make, without the input of counsel. Indeed, the fact that the juror, a relatively short time after professing to be alright to continue, asked to be excused proves the point. Furthermore, had the communication been disclosed when it occurred, the alternate jurors would have been available to replace the juror. The trial court, by waiting until the alternates were dismissed to advise the respondent and the State of the subject communication, limited the available options. The respondent was clearly prejudiced by the trial court's failure to disclose the communication.

We conclude, therefore, that the trial court erred when it failed to disclose the communication between the judge's secretary and the juror, and that this error was prejudicial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY BALTIMORE COUNTY.**

Judge HARRELL joins in the judgment only.